

## In re T.M.

[756 A.2d 793]

No. 99-351

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 26, 2000

*Edward G. Adrian,* Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Michael Rose,* St. Albans, for Defendant-Appellant.

*Eric G. Parker* of *Abare, Nicholls & Parker, P.C.,* Barre, and *Michael P. Farris* and *David E. Gordon,* Purcellville, Virginia, for Amicus Curiae Home School Legal Defense Association.

**Morse, J.** K.M., the mother of T.M., appeals from a family court order adjudicating the minor to be a child in need of care and supervision based on findings that he was neither attending nor enrolled in public school, nor enrolled in an "approved" home-study

program, and therefore was habitually and without justification truant from school. Mother contends that: (1) the minor was properly enrolled in a home-study program under the relevant statutory scheme, and therefore could not have been found to be truant; (2) the family court lacked jurisdiction because of ongoing administrative proceedings; (3) the finding of truancy required evidence that the minor's absence from school was volitional; and (4) the court lacked subject matter jurisdiction because the proceedings did not concern the best interests of the minor. We agree with the contention that the minor was properly enrolled in a home-study program, and therefore reverse.

The material facts are undisputed. In March 1996, mother withdrew T.M. from public school and filed a home-study enrollment notice with the Department of Education under the procedures set forth in 16 V.S.A. § 166b. Because the minor qualified for special education services, an individualized education plan (IEP) provided for a tutor to supplement the home-study program. Mother became dissatisfied with the tutor, however, and dismissed her. Thereafter, mother continued to home school T.M., filing the statutorily required enrollment notice each year with the Department. With the exception of the first notice, however, the Department deemed each of the subsequent notices of enrollment "incomplete" based upon a determination that information concerning the IEP to address the minor's special education needs was insufficient.

In February 1998, the Department of Social and Rehabilitation Services (SRS) sent a letter to mother stating that it had received information from the Department and local school district indicating that T.M. was neither attending public school nor enrolled in an "approved" home-study program adequate to meet his educational needs. When no response was forthcoming, SRS filed a CHINS petition, alleging that the minor was "habitually and without justification truant from school" under 33 V.S.A. § 5502(a)(12)(C).

Thereafter, mother and the Department entered mediation regarding the minor's IEP requirements. In an April 1998 letter to mother, the Department acknowledged receipt of additional information regarding T.M.'s home-study program, but observed that, while the curriculum outline was otherwise satisfactory for the remaining two and a half months of school, it did not meet his special education needs under the IEP and therefore was not complete. A letter from the Department to mother dated August 5, 1998, stated that the home-study enrollment notice for the next school year had been reviewed

and that all curriculum areas were satisfactory, but reiterated the Department's position that enrollment would not be complete until the mediation concerning T.M.'s special education needs was concluded. SRS withdrew the CHINS petition pending the outcome of the mediation.

The parties never completed mediation, however, and T.M. ceased working with his previously assigned school advisor. The Department informed mother by letter dated October 12, 1998, that it remained willing to provide a tutor to deliver IEP services to T.M., that T.M. was past due for a three-year comprehensive IEP evaluation, and that, until the evaluation was completed, his home-study program could not be approved. Shortly thereafter, SRS filed a second CHINS petition alleging that T.M. was truant. Additional correspondence between mother and the Department failed to resolve the issue.

In letters dated November 25, 1998, and December 23, 1998, the Department informed mother of its intent to request a due process hearing under the home-schooling statute. See 16 V.S.A. § 166b(e) & (f). In fact, mother requested such a hearing on January 4, 1999, and the Department followed with a similar request several days later. The hearing process had apparently not commenced at the time of these proceedings, and the record does not indicate whether such a hearing occurred, or its outcome.

Mother appeared pro se at the initial merits hearing on the CHINS petition in February 1999. At the hearing, the court inquired of mother as to whether T.M. was enrolled in an "approved" home-study program. Mother responded that it was "all approved [and] . . . completed" except for the issue of T.M.'s need to participate in special education services, and explained that a due process hearing had been requested to resolve that question. Unsatisfied, the court pressed mother further, stating: "Okay. I understand that, but it's a yes or no question as to whether or not the Department of Education has approved your program." Mother responded, "I'm not quite sure if they have or not."

The court thereupon reviewed the home-study statute on the record, questioning the State's counsel as to the basis of the petition and the meaning of the statute as follows: "I am sorry, Mr. Adrian, let me clarify something. Is there anything more to this case than [T.M.] not attending an approved school?" Counsel responded: "No, your Honor." The court continued: "He's not attending public school, he's not attending private school, he's being schooled at home but the plan isn't approved. Am I missing something?" Counsel responded: "No,

you're not missing anything." Mother thereupon interjected, "All approved except for that IEP," to which the court stated: "Well, you either have approval or you don't ma'am, at least that's what I gather."

The merits hearing continued on April 12, 1999, at which time both mother and T.M. appeared with appointed counsel. The tenor of the hearing continued in much the same vein as the initial proceeding, with court and counsel focusing on whether T.M. was properly enrolled in an "approved" home-study program. Counsel for the State defined the issue as "whether or not there is an educational program in place and whether or not he's enrolled in a program at this time," and asserted that the minor was not currently enrolled. The court agreed that the issue was narrow, observing that "the question is whether she has an approved home-school plan." Mother's counsel responded, "I believe she does,"and mother testified that she believed the program had been approved notwithstanding the State's concern about the lack of special education services.

The colloquy between court and counsel over the meaning of enrollment under the home-study statute continued. The court pressed mother's counsel to acknowledge that enrollment was not "approved" until the Department determined that an application was "complete." Counsel resisted, observing: "I don't agree with that because I believe once the curriculum is approved . . . the home schooling can begin." At the conclusion of the hearing, the court interpreted the statute to mean that "the home-school program needs to be approved," and that a child "needs to attend an approved school or approved home-school program . . . and if they are not enrolled in that program, then essentially they are truant." Based on this conclusion, the court ordered a new evaluation of T.M. to determine his current special education needs.

The CHINS hearing recommenced in July to discuss the results of the evaluation. The court observed that the report indicated there were educational needs that were not being met, and reiterated its earlier conclusion that T.M. was "not enrolled in an approved home-school program, that's the bottom line." Although mother's counsel continued to contest that conclusion, the court pronounced the minor to be CHINS based upon a finding of truancy. The court issued a brief written decision several days later, finding that the minor was not enrolled in or attending school, was not enrolled in an approved home-study program, and therefore was CHINS under 33 V.S.A. § 5502(a)(12)(C) (defining CHINS as a child who "is habitually and without justification truant from school"). This appeal followed.

Mother contends the court erred in concluding that T.M. was not enrolled in a home-study program.[1] The issue required the court to construe and apply the home-study statute in light of the record evidence. The home-study statute, 16 V.S.A. § 166b, has several components. First, it sets forth a process for enrollment in a home-study program. This is accomplished by sending a written enrollment notice to the Commissioner of Education. See *id.* § 166b(a). Enrollments expire on July 1, and new notices may be filed after March 1 for the new school year. See *id.* Next, the statute prescribes the information to be included in the enrollment notice. This includes the name and age of the child; names, addresses, and telephone numbers of the parents or guardians; an annual assessment of the student's progress during the preceding school year; an evaluation as to whether the child is handicapped if not previously enrolled in public school or a home-study program, and, if ordered by a hearing officer after a hearing under the statute, a comprehensive evaluation to determine eligibility for special education; a detailed outline of the content to be provided in each subject area of study, including any special services to accommodate any handicapping condition in accordance with state or federal law; the school district in which the program is located; the names, addresses, telephone numbers, and signatures of the persons providing instruction; and the signatures of all custodial parents or guardians. See *id.* § 166b(a)(1)-(8).

Within fourteen days of receiving an enrollment notice, the Commissioner or designee is required to send an acknowledgment of receipt, which must include a determination:

> (1) either that the enrollment notice is complete and no further information is needed, or specifically identifying information required under subsection (a) of this section

---

[1] Although the State claims that mother failed to preserve this issue for review, the record summarized above demonstrates that the issue was vigorously contested and that mother, through her own efforts and through the argument of counsel, consistently asserted that the minor was legitimately enrolled in a home-study program and therefore could not be adjudicated CHINS on the basis of truancy. The State also asserts that mother's counsel effectively waived the issue by stating at one point that T.M. was "approved, but he's not enrolled because of the IEP issue." Although it reflects the general confusion on the part of all concerned as to the precise meaning and requirements of the home-study statute, we are not persuaded that the statement was intended to be a concession of counsel's previously stated and consistently maintained position that T.M. was properly attending a home-study program, and therefore could not be deemed to be truant.

which is missing. If information is missing the home study program shall provide the additional information in writing within 14 days; and

(2) either that the child may be enrolled immediately or that the child may be enrolled 45 days after the enrollment notice was received. At any time before the child may be enrolled, the commissioner may order that a hearing be held. After notice of such a hearing is received, the child shall not be enrolled until after an order has been issued by the hearing officer to that effect.

*Id.* § 166b(b). The statute goes on to delineate in separate sections the procedures for hearings to determine whether a home-study program meets the statutory requirements. Subsection (e) provides that the Commissioner may call for a hearing to determine the adequacy of a home-study program "for a student who has not yet enrolled." Subsection (f) provides that the Commissioner may also call a hearing "after enrollment" to determine whether the program has failed to comply with minimum statutory requirements or a minimum course of study. Subsection (g) states that the hearing must occur within thirty days of notice, and further provides: "If a notice concerns a child not yet enrolled in a home study program, enrollment shall not occur until an order has been issued after the hearing." If a child is already enrolled, an order terminating enrollment takes effect immediately. See *id.* § 166b(h).

■ Notwithstanding the frequent references by the court — and occasionally the parties — to the Commissioner's ostensible discretion to "approve" a home-study program, the statute plainly confers no such authority. Under subsection (b), enrollment occurs either immediately or within 45 days after receipt of the enrollment notice, unless the Commissioner orders a hearing, in which case "the child shall not be enrolled until after an order has been issued by the hearing officer to that effect." *Id.* § 166b(b)(2). There is no provision, however, authorizing or empowering the Commissioner to defer enrollment indefinitely merely by virtue of a letter to the parent or guardian indicating that the information provided is "incomplete." Where the Commissioner has requested additional information under subsection (b)(1) and the home-school program has not provided that information within the prescribed fourteen-day period, the Commissioner may prevent enrollment by calling a hearing to establish whether the program complies with the statute and will provide a

minimum course of study. *Id.* § 166b(e). If the Commissioner fails to call for a hearing within forty-five days of receipt of the enrollment notice, the child is enrolled. Any doubts about the adequacy of the program that arise thereafter may be resolved by noticing a hearing under subsection (f), but such notice does not affect the child's enrollment status, which remains in effect pending the outcome of the hearing. See *id.* § 166b(g), (h).

The enrollment process outlined above is plainly designed to expedite the enrollment of children in home-study programs, and to place the burden on the State to preclude enrollment solely by means of a noticed hearing, which must occur within thirty days of the notice. This conclusion is readily apparent not only from the statutory provisions discussed above, see *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) (first step in determining legislative intent "is to look at the language of the statute itself" and to "presume the Legislature intended the plain, ordinary meaning of the language"), but also from the legislative history. The legislation that resulted in Vermont's first home-study statute in 1987 also amended 16 V.S.A. § 1121, the compulsory school-attendance statute. Prior to the amendment, § 1121 had required a child between the ages of seven and sixteen "to attend an approved public school or an approved or reporting private school" unless the child "(2) is being furnished with an *approved* program of home instruction." (emphasis added); see *State v. DeLaBruere*, 154 Vt. 237, 241, 577 A.2d 254, 257 (1990). In conjunction with enactment of the home-study statute, the Legislature modified the compulsory-attendance statute by deleting the underscored language, and substituting the following: "A person having the control of a child between the ages of seven and sixteen years shall cause the child to attend an approved public school, an approved or reporting private school *or a home study program* . . . ." 16 V.S.A. § 1121 (emphasis added); see 1987, No. 97, § 2. This contemporaneous amendment to the compulsory attendance law reinforces the conclusion that preapproval of a home-study program was not contemplated by the Legislature.

This conclusion is also evident from testimony concerning the home-study bill before the Senate Education Committee. Minutes of the hearings reveal that one of the problems the amendment was intended to remedy was delays in approval of home-study programs by the Department. Several witnesses testified that backlogs in processing otherwise timely home-school applications had held up approvals beyond the start of the school year, resulting in students

becoming technically truant. They observed that the 45-day automatic enrollment provision would prevent this from occurring, and place the onus on the state to act expeditiously.

Finally, we note that the notice-enrollment provisions of the Vermont home-study statute are consistent with similar home-study laws across the country. Indeed, adoption of § 166b was part of a national trend among the states toward adoption of home-schooling statutes or regulations. See N. Devins, *Fundamentalist Christian Educators v. State: An Inevitable Compromise*, 60 Geo. Wash. L. Rev. 818, 819 (1992); Comment, *The Constitutionality of State Home Schooling Statutes*, 39 Vill. L. Rev. 1309, 1336-39 (1994). Although provisions vary, roughly thirty-nine states require home schoolers to provide the state with notice of their intent to home school, and most require various information regarding the children, teachers, and curriculum. See Comment, *supra*, at 1341-43 n.204 (listing state statutes and requirements); *Brunelle v. Lynn Public Schools*, 702 N.E.2d 1182, 1185 n.7 (Mass. 1998) (noting that thirty-nine states require parents to notify the state or school of their intent to home school). Only six states require advance approval as well as notification, see *Brunelle*, 702 N.E.2d at 1185, largely because of the burden and potential free exercise problems such requirements pose for parents. See Comment, *supra*, at 1343. Thus, the enrollment process set forth in the Vermont home-study statute reflects a careful balance between the interests of the state in ensuring that students receive an adequate education, and the right of parents to direct the education of their children.

■ Thus understood, it is readily apparent that T.M. was properly enrolled in a home-study program under the statute. Notwithstanding the State's concern about the IEP component of the program, and its efforts to obtain additional information and cooperation from mother, it failed to order a hearing within 45 days of receipt of mother's notice of enrollment. Under the statute, therefore, T.M. became automatically enrolled in a home-study program. The State's subsequent call for a hearing, which was apparently still pending at the time of these proceedings, did not operate to terminate T.M.'s current enrollment. Accordingly, the court's conclusion that T.M. was

CHINS based upon a finding that he was habitually truant was clearly erroneous and must be reversed.[2]

*Reversed.*

---

[2] Because our decision rests upon an interpretation of 16 V.S.A. § 166b finding that T.M. was properly enrolled in a home-study program, there is no need to consider mother's alternative arguments concerning exhaustion and jurisdiction.