2013 VT 41

# In re Beliveau NOV

# Town of Fairfax v. Leon Beliveau

[72 A.3d 918]

Nos. 12-135 & 12-136

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed June 14, 2013

2

*Peter J. McDougall* of *Paul Frank + Collins P.C.*, Burlington, for Appellant.

*John H. Klesch* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Appellee.

¶ 1. **Skoglund, J.** Homeowner appeals the Superior Court, Environmental Division's grant of summary judgment in favor of the Town of Fairfax and imposition of associated penalties. The court upheld the Town's violation, finding that homeowner changed the use of his property from a single-family dwelling to a rooming-and-boarding house without obtaining a change-of-use permit as required by the applicable zoning bylaws. Homeowner contends: the trial court erred in finding that the property was used as rooming-and-boarding house; the definitions of family and rooming-and-boarding house in the Town's zoning bylaws are unconstitutionally vague; and the court improperly assessed the accompanying fines. We affirm.

¶ 2. As found by the environmental court, homeowner owns a house in the Town of Fairfax. He uses his home as both his personal residence and as a rental property. He maintains a bedroom for his exclusive use and rents the remaining portions of his home. Homeowner began providing sleeping accommodations in his home, charging for and receiving payments for those accommodations sometime around June 2008. Occupants paid a set monthly rent based on the oral agreement formed between each occupant and homeowner. Neither homeowner, nor occupant was obligated to continue the rental relationship beyond the month for which rent was currently paid.

¶ 3. In May 2008, the zoning administrator for the Town personally served homeowner a letter informing him that his house was impermissibly employed as a rooming-and-boarding house as a result of his failure to obtain the requisite zoning permit for the change in use from a single-family dwelling. Homeowner was informed that he could cure the violation by either "obtaining all the necessary permits and approvals or by

terminating the use." Homeowner did neither. The zoning administrator issued a formal notice of violation for the unpermitted change in use on June 5, 2008.

¶ 4. Homeowner appealed the violation to the Fairfax Development Review Board, which found that the homeowner "did change the use of the home . . . from a single family home to a Rooming/Boarding house without obtaining the required permits." Homeowner then appealed the Board's decision to the environmental court. Soon thereafter, the Town filed an enforcement action with the court against homeowner.[1] On June 24, 2009, the Town filed a motion for summary judgment, which the court granted, upholding the violation. The court entered a judgment against homeowner and levied a penalty in the amount of $22,770 against homeowner.

¶ 5. Homeowner appealed the environmental court's decision to this Court. In July 2010, this Court reversed the environmental court's decision and remanded the case for additional proceedings, finding that the Town provided no evidence "that [homeowner] resided in the home during the period in question" and "failed to demonstrate that individuals were supplied with and charged for sleeping accommodations 'for a fixed period of time' " — both necessary elements of the rooming-and-boarding definition in the Town's zoning bylaws, as discussed in detail below. *In re Beliveau Notice of Violation*, Nos. 2010-064, 2010-065, 2010 WL 7795009, at *2 (Vt. July 16, 2010) (unpub. mem.), http://www.vermontjudiciary. org/d-upeo/Microsoft%20Word%20-%20eo10-064.pdf.

¶ 6. On remand, the parties conducted additional discovery, and then both filed cross-motions for summary judgment. The environmental court granted summary judgment in favor of the Town, determining that homeowner had changed the use of his house from a single-family residence to ·a rooming-and-boarding house without first obtaining a permit for the rooming-and-boarding-house use. The court imposed a penalty of $63,142 against homeowner and ordered the immediate cessation of use of the property as a rooming-and-boarding home. Homeowner appeals.

¶ 7. This Court reviews decisions on motions for summary judgment de novo. *Mooney v. Town of Stowe*, 2008 VT 19, ¶ 5, 183

---

[1] Though the two cases were not formally consolidated by the environmental court, the court operated as though they were.

Vt. 600, 950 A.2d 1198 (mem.). A grant of "[s]ummary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Gade v. Chittenden Solid Waste Dist.*, 2009 VT 107, ¶ 7, 187 Vt. 7, 989 A.2d 491. "When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." *City of Burlington v. Fairpoint Commc'ns, Inc.*, 2009 VT 59, ¶ 5, 186 Vt. 332, 980 A.2d 226 (citing *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990)).

¶ 8. Our review of environmental court decisions is deferential. *In re Sardi*, 170 Vt. 623, 623, 751 A.2d 772, 773 (2000) (mem.). This Court is bound by the environmental court's interpretation of a zoning ordinance unless it is clearly erroneous, arbitrary, or capricious. *Badger v. Town of Ferrisburgh*, 168 Vt. 37, 39, 712 A.2d 911, 913 (1998).

¶ 9. Homeowner challenges the environmental court's determination that as a matter of law his property was used as a rooming-and-boarding house. The zoning bylaws define a rooming-and-boarding house as "[a]n owner occupied residence where a person or persons, for a fixed period of time, are supplied with and charged for meals or sleeping accommodations or both." For a property to be rendered a rooming-and-boarding house under the bylaws, each of the three elements must be met: (1) the residence must be occupied by the owner; (2) a person or persons must be supplied with and charged for meals or sleeping accommodations or both; and (3) such provisions must be for a fixed period of time. It is undisputed that at all relevant times the property was homeowner's primary residence. It is also undisputed that other individuals living at the property were provided with, and charged for, sleeping accommodations. Homeowner contends that because individuals staying at the premises were doing so on an at-will basis and were free to stay for an indefinite period of time, pursuant to oral agreements between each individual and homeowner, the third element — that accommodations be supplied for a fixed period of time — was not satisfied.

¶ 10. The agreements between homeowner and the individuals residing in his home were as follows. Homeowner entered into an oral agreement with each individual, stating they were to "pay X

dollars per month for the use of the rooms." On occasion, homeowner permitted individuals to continue residing at his home despite their failure to pay the full, agreed-upon amount for a particular month. A tenant who wished to remain another month in the house then paid homeowner an additional month's rent at the agreed-upon rate. If agreeable to him, homeowner accepted the rent payment. The environmental court concluded, and we agree, that this was a rental agreement for a fixed month-to-month term.

■ ¶ 11. Homeowner claims that the oral agreement created an at-will tenancy pursuant to 27 V.S.A. § 302. Section 302 of Title 27 provides that "[e]states or interests in lands, created or conveyed without an instrument in writing shall have the effect of estates at will only." By its very nature, a tenancy at will intimates indefinite durational terms. A tenancy at will is one "in which the tenant holds possession with the landlord's consent but without fixed terms (as for duration or rent)." Black's Law Dictionary 1604 (9th ed. 2009). Nonetheless, common law and our case law provide that an estate at will is converted into a periodic tenancy by the payment of rent. The conversion is wrought when the lessor receives a periodic rent, be it month-to-month or year-to-year, etcetera. See . Silsby v. Allen, . 43 Vt. 172 (1870); Black's Law Dictionary, supra, at 1604.

■ ■ ¶ 12. In the present case, the individuals residing at homeowner's home made continuous monthly payments, creating a periodic tenancy — a "tenancy that automatically continues for successive periods." Black's Law Dictionary, supra, at 1604. It is of little consequence that the successive periods at issue here were for a relatively short period of time — a month. A fixed period can be for any duration. The fact that homeowner did not always require his tenants to pay the full amount of agreed-upon rent and allowed certain tenants to forgo some rent payments and provide maintenance or repair services in lieu of rent also does not change the result. Further, homeowner acknowledged that he was required to provide tenants with the requisite statutory notice before terminating the rental agreement. See generally 9 V.S.A. § 4467.

■ ■ ¶ 13. Following homeowner's suggested approach — that only agreements with specific or set end dates satisfy the fixed period requirement under the bylaws — would create absurd

results. Indeed, such a narrow interpretation would arguably eliminate periodic tenancies, renewable tenancies, or any other arrangements that lack a precise termination date. To accept this assertion would render a portion of the rooming-and-boarding definition meaningless. "Generally, we do not construe a statute in a way that renders a significant part of it pure surplusage." *In re Lunde*, 166 Vt. 167, 171, 688 A.2d 1312, 1315 (1997) (quotation omitted). We find the environmental court's interpretation that homeowner provided sleeping accommodations for a fixed period of time and therefore operated a rooming-and-boarding house reasonable. As such, homeowner changed the use of his property from a single-family dwelling to a rooming-and-boarding house without obtaining the necessary permits and thus violated the Town's zoning bylaws.

¶ 14. Homeowner next contends that the definitions of family and rooming-and-boarding house under the Town's zoning bylaws are unconstitutionally vague. Homeowner argues that such definitions "fail to provide the required notice, clarity and precision to permit a homeowner [to] determine what is necessary for compliance."

¶ 15. Laws and regulations are unconstitutionally vague when they either fail to provide sufficient notice for ordinary people to understand what conduct is prohibited, or allow arbitrary and discriminatory enforcement. *In re Rusty Nail Acquisition, Inc.*, 2009 VT 68, ¶ 12, 186 Vt. 195, 980 A.2d 758. The test for vagueness is less strict when applied to regulations that affect "economic interests, not constitutional rights, and when the aggrieved party can seek clarification of its meaning or resort to administrative processes." *Id.* ¶ 13 (quotation omitted). The application of the vagueness doctrine is relaxed in the context of economic regulations because there are several opportunities for the voters of Fairfax to participate in the adoption or amendment of bylaws.[2] See 24 V.S.A. § 4442. Additionally, the Development Review Board provides property owners with an interpretation as to the precise meaning of any word(s), if requested. Because there are several ways for an individual to request change and seek clarification from the Town and the select board, "the concern that ordinary people will not be able to understand what conduct is

---

[2] The Fairfax Select Board held three public hearings and garnered public input before adopting the most recent amendments in 2007.

prohibited is greatly tempered" in this regulatory context. See *Rusty Nail*, 2009 VT 68, ¶ 14.

■ ¶ 16. In light of this, "we are unlikely to intervene for persons who had the opportunity to clarify their responsibilities and did not use it." *Id.* ¶ 15 (quotation omitted). Here, homeowner bypassed the opportunity to seek clarification from the review board regarding the use of his property, and in fact, he tried to eliminate the permitting process altogether when, after the initial citation, he neither discontinued the use nor sought a conditional use permit as the zoning administrator instructed. Instead, homeowner waited until he was cited for violating the bylaw to challenge its constitutionality. Our case law indicates that "we approach a vagueness challenge such as the one here with a critical eye." *Id.*; see also *Rogers v. Watson*, 156 Vt. 483, 492, 594 A.2d 409, 414 (1991) (denying defendants' void for vagueness challenge when after being denied permitting, they unilaterally proceeded to try to eliminate need for one). With this in mind, we review the bylaws.

¶ 17. The Town's zoning bylaws define family as "[o]ne or more persons living as a household unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels, or hotels." As such, a family is not necessarily comprised of relatives only, but rather, of a group of people *living as a household*, in contrast to persons who occupy rooming-and-boarding homes, clubs, motels, or hotels. As noted above, a rooming-and-boarding house is defined as "[a]n owner occupied residence where a person or persons, for a fixed period of time are supplied with and charged for meals or sleeping accommodations or both."

¶ 18. Homeowner argues that the definitions lack clarity and fail to provide a property owner with the requisite notice to determine compliance. Homeowner claims that the definitions as they stand require the Town to infringe on a property owner's right to privacy because in order to assess whether a household unit exists, the Town must investigate who resides at the property and how those living together interact, i.e., whether they eat meals together, watch television together, share bathrooms, or shop for food together.

¶ 19. True, the distinction between a rooming-and-boarding house and family revolves around the household dynamic and interactions therein. And, while ascertaining the use of the

dwelling requires some information about personal interactions, a mere questionnaire as was used here would suffice. And the distinction is clear enough to avoid giving the zoning administrator unfettered discretion. As the trial court pointed out, other jurisdictions that have addressed this issue have found that single-family zoning regulations include groups of unrelated persons living together where the living arrangement is stable, permanent, and not for profit, and the people living together function in a manner similar to a traditional family unit. See, e.g., *Borough of Glassboro v. Vallorosi*, 568 A.2d 888, 894 (N.J. 1990); *In re Miller*, 515 A.2d 904, 908 (Pa. 1986); cf. *In re Stoddard Site Plan*, No. 254-12-05, slip op. at 5-6 (Vt. Envtl. Ct. June 21, 2006), http://www.vermontjudiciary.org/gtc/environmental/ENVCRT Opinions2005-2009/05-254z%20Stoddard%20sjo.pdf (finding that proposed multi-family dwelling unit did not contain sufficient common facilities to qualify as a "housekeeping unit"). Here, the environmental court found that homeowner provided no evidence suggesting that the persons renting rooms at the house functioned as a family or household unit in any way.

¶ 20. When read together, the definitions of rooming-and-boarding house and family provide sufficient guidance to avoid standardless discretion on the part of the zoning administrator. The definitions also provide a property owner with a general understanding of how to comply with the bylaws, notwithstanding the built-in mechanisms for a property owner to seek clarification from the review board. Accordingly, we hold that the definitions of rooming-and-boarding house and family within the Town's zoning bylaws are not unconstitutionally vague. We agree that the situation at homeowner's house is not a family unit.

¶ 21. Homeowner lastly contests the environmental court's penalty assessment. The Town requested a penalty of $93,420, aggregating homeowner's economic gain and the Town's expenses. Homeowner believed the fine, if any, to be the cost of the zoning permit application. Pursuant to 24 V.S.A. § 4451(a), the court imposed a penalty of $63,142, or $56.48 per day for a violation period of 1118 days, payable to the Town.

¶ 22. The trial court is given broad discretion in setting a fine pursuant to 24 V.S.A. § 4451. Unless there is abuse of discretion, the environmental court's penalty assessment will not be overturned. See *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 529, 711 A.2d 1163, 1172 (1998).

¶ 23. Section 4451 of Title 24 authorizes a maximum fine of $100 per violation of a zoning bylaw each day such a violation continues.[3] The court has the discretion to determine the amount of a fine, and, in doing so, to balance any continuing violation against the cost of compliance and to consider other relevant factors, including those specified in the Uniform Environmental Enforcement Act. *In re Jewell*, 169 Vt. 604, 606-07, 737 A.2d 897, 900 (1999) (mem.). Here, the environmental court considered homeowner's benefit, as well as the Town's expenses for attorney's fees and court costs in seeking compliance with the zoning regulations. The court recognized that homeowner had the benefit of the zoning violation from early 2007 through late 2011, or 1118 days, including a brief cessation of the violation and a seven-day cure period provided by the statute. The court did not account for expenses incurred from the rentals. It reasoned that homeowner would "have had to pay the taxes, mortgage, utilities, repairs, supplies, cleaning, maintenance, and insurance" as a homeowner, regardless of whether he rented out these rooms. The court also weighed the fact that the length of the violation "was within [homeowner's] control." In sum, the trial court calculated the penalty to remove the economic benefit and the avoided costs achieved by homeowner, as well as to compensate the Town generally for the legitimate costs of bringing the enforcement actions. See *Town of Calais v. Noordsi*, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008), http://www.vermontjudiciary.org/ gtc/environmental/ENVCRTOpinions2005-2009/06-142zd.TCalaisv Noordsij.dec.pdf (citing *City of St. Albans v. Hayford*, 2008 VT 36, ¶¶ 15-18, 183 Vt. 596, 949 A.2d 1058) (mem.).

¶ 24. On appeal, homeowner argues that the economic benefit he obtained from the violation should be measured by the avoided cost of compliance, that is, the cost of the zoning application. Homeowner cites *Agency of Natural Resources v. Deso*, 2003 VT 36, 175 Vt. 513, 824 A.2d 558 (mem.), in support of his claim. In *Deso*, the Agency of Natural Resources imposed a fine on the owner of a gas station who impermissibly operated the station without the required vapor recovery system. There, the court held

[3] In 2012, the Legislature amended the statute to allow for fines up to $200 per day. Since the activities in question were conducted from 2007 to 2011, the statute that was in effect from 2004 to 2011 controls.

that the owner was not required to disgorge all profits earned during the period of noncompliance because there was insufficient evidence to determine that all profits were an economic benefit of the violation. Rather, it expounded that there "must be at least some evidence of cause and effect between the misconduct and an unfair economic advantage gained from the misconduct . . . for example, if [the violator] had gained higher profit margins or increased market share by selling cheaper gas." *Id.* ¶ 11. In other words, the court held that all profits gained through a violation are not necessarily an economic benefit of the violation, but when the violation gives the violator a competitive advantage, profits correlating to the advantage are an economic benefit subject to penalty by confiscation. *Id.* ¶ 9; see also 10 V.S.A. §§ 8001(2), 8010(b)(5). Homeowner asserts that the same is true in his case; that is, he should not be required to relinquish all benefits associated with the violation but rather only those that afforded him a competitive advantage over his competitors, which he presumes is the cost of the application of the permit. Homeowner's argument is unavailing.

¶ 25. Homeowner fails to recognize that this Court in *Deso* found that the cost alternative approach was not applicable in cases where a violation consists of the start of business operations without a permit, as is the case here. See, e.g., *Agency of Natural Res. v. Godnick*, 162 Vt. 588, 597, 652 A.2d 988, 994 (1994) (employing economic-benefit calculation from use of newly constructed warehouse prior to obtaining final Act 250 permits). Furthermore, in July 2008, the Legislature made express that an economic benefit includes "a reasonable approximation of any gain, advantage, wrongful profit, or delayed avoided cost, financial or otherwise, obtained as a result of a violation. Economic benefit shall not be limited to only competitive advantage obtained." 10 V.S.A. § 8002(11).

¶ 26. Moreover, the applicable statute authorized the environmental court to impose up to $100 per violation of a zoning bylaw. 24 V.S.A. § 4451(a). At any time homeowner either could have applied for approval of the rooming-and-boarding house use, or could have restored the single-family use of the house. Because the penalty that the court imposed was well below the amount allowed by statute, and homeowner had ample opportunity to cure

the violation following notice from the Town, the penalty was reasonable.

*Affirmed.*