STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 98-7-17 Vtec

| Poultney Properties LLC Change of Use  &  SP App. |
|---|

## ENTRY REGARDING MOTION

Count 1, Municipal DRB Multiple Types (98-7-17 Vtec)

Title:          Motion in Limine to Narrow Scope (Motion 15)
Filer:          Poultney Properties, LLC.
Attorney:    David R. Cooper
Filed Date:   January 17, 2020

Response filed on 01/31/2020 by Attorney Gary R. Kupferer for Interested Person Town of Poultney
        Opposition
Response filed on 02/03/2020 by John Swenor, Interested Person
        Opposition
Response filed on 02/07/2020 by Neal C. Vreeland, Interested Person
        Opposition

**The motion is GRANTED IN PART and DENIED IN PART.**

Poultney Properties, LLC (Poultney Properties) appeals the partial denial of its application for change of use and site plan approval by the Town of Poultney Development Review Board (DRB).[1]  Mr. Neal Vreeland and a group of Poultney residents, Concerned Citizens of Poultney, and several individual neighbors join the appeal to oppose the application.[2]  Before the Court is Poultney Properties' motion in limine to narrow scope of the issues for trial and to exclude evidence on multiple grounds.

---

[1] The DRB denied Poultney Properties' application for a retail store located at 61 Beaman Street, Poultney, Vermont (the Property).  The 61 Beaman Street address is located on a single 1.76-acre parcel that includes four separate buildings at 53, 55, 57, and 61 Beaman Street.  All of these addresses predate the Poultney Bylaws and have shared a single parcel prior to the enactment of the Bylaws.  Poultney Properties LLC Change of Use & SP App., No. 97-7-17 Vtec slip op. at 2 (Vt. Super. Ct. Envtl. Div. Nov. 26, 2018) (Walsh, J.).

[2] The individual neighbors participating as interested parties include John Swenor, Linda Pepler, and Walter and Rebecca Riberio.

In this matter, Poultney Properties is represented by David R. Cooper, Esq., and David Carpenter, Esq. The Town of Poultney is represented by Gary R. Kupferer Esq. Mr. Vreeland, Mr. Swenor, Ms. Pepler, and Mr. and Mrs. Riberio are self-represented. Concerned Citizens of Poultney is represented by its spokesperson, C.B. Hall.

**Discussion**

Currently before the Court is Poultney Properties' motion in limine to narrow scope of the issues for trial and to exclude evidence. First, Appellants argue that § 1203 of the Town of Poultney Unified Bylaws (Poultney Bylaws) is (1) standardless and unenforceable and (2) § 1203(B) regulates noise only to the extent that it arises from vehicle circulation, parking, and loading facilities at the project site. Second, Poultney Properties contends § 711 is not applicable to nonconforming use when the applicant's use is permitted and only applicable to proposed enlargements for nonconforming structures. The Town of Poultney (the Town) and Mr. Vreeland oppose the motion. We address these issues in order below.

**I.      Whether § 1203 of the Poultney Bylaws is vague and unenforceable.**

Poultney Properties argues the §§ 1203(A)–(D) of the Poultney Bylaws, with the limited exception of § 1203(B) regarding parking requirements, is standardless and therefore does not require evidence to demonstrate compliance. Appellant's Motion in Limine to Narrow Scope of Issues for Trial and to Exclude Evidence at 1–5, filed Jan. 15, 2020. The Town, joined by Mr. Vreeland, asserts § 1203 of the Poultney Bylaws contains enforceable regulatory standards which require evidence to demonstrate compliance and allow the Court to interpret and apply the Bylaws to determine if the project is consistent with the Town Plan's purpose. Town of Poulntey's Opposition to Appellant's Motion in Limine at 1, filed Jan. 31, 2020.

Generally, the Court presumes statutes to be constitutional. In re LaBerge NOV, 2016 VT 99, ¶ 18, 203 Vt. 98 (upholding a Town's noise ordinance against void-for-vagueness arguments) (citing Badgley v. Walton, 2010 VT 68, ¶ 20, 188 Vt. 367 ("[T]he proponent of a constitutional challenge has a very weighty burden to overcome.")); see also State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1226 (R.I. 2012) ("When we review a challenge to a statute or ordinance, we begin with a presumption that the enactment is constitutional."). Nevertheless, all ordinances and statutes are subject to the limits of the Constitution and are unenforceable if deemed overly vague or if the statutes delegates standardless discretion. In re Handy, 171 Vt.

2

336, 348 (2000).  Should an ordinance or statute fail to provide sufficient standards to adequately guide decisionmakers and applicants, it would violate property owners' due process rights.[3]  In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 17, 185 Vt. 201 (holding that a town zoning board's ordinance provided insufficient guidance on how to "protect" natural resources and therefore violated due process).

Laws and regulations are unconstitutionally vague when "they either fail to provide sufficient notice for ordinary people to understand what conduct is prohibited, or allow arbitrary and discriminatory enforcement."[4]  In re Beliveau NOV, 2013 VT 41, ¶ 15, 194 Vt. 1.  Indeed, a bylaw need only "provide sufficient guidance to avoid standardless discretion" by agencies such that they provide an applicant or property owner with "a general understanding of how to comply with the bylaws."  Beliveau, 2013 VT 41, ¶ 20.  A bylaw need not provide concrete, specific, or numerical standards to be enforceable.  In re Pierce Subdivision Application, 2008 VT 100, ¶ 21, 184 Vt. 365, 375 (noting a bylaw encourages flexible development and is enforceable even when it fails to provide "concrete" or "specific" standards); In re Ferrera & Fenn Gravel Pit, 2013 VT 97, ¶ 16, 195 Vt. 138 (rejecting the need for numerical decibel standards for a Town noise limit).

In our review, we begin with general principles of statutory construction, which look to the plain language of zoning regulations with the purpose of giving effect to legislative intent.  See In re Weeks, 167 Vt. 551, 554 (1998).  Words in bylaws are interpreted in a manner that gives "effect to the whole and every part of the ordinance."  In re Trahan, 2008 VT 90, ¶ 20, 184 Vt. 262 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)).  Therefore, when evaluating vagueness, this Court looks to the entire bylaw, not just a specific subsection, to determine the standard to be

---

[3] The test for vagueness is "less strict" when applied to a regulation that affects economic interests, not constitutional rights, and when "the [aggrieved party] can seek clarification of its meaning or resort to administrative processes. In re Rusty Nail Acquisition, Inc., 2009 VT 68, ¶ 13, 186 Vt. 195, 205 (citing Rogers v. Watson, 156 Vt. 483, 491–92 (1991).  This relaxed test is utilized when "there are several opportunities for . . . voters . . . to participate in the adoption or amendment of bylaws" and "request change and seek clarification."  In re Beliveau NOV, 2013 VT 41, ¶ 15, 194 Vt. 1 (citing In re Rusty Nail., 2009 VT 68, ¶ 13 (noting in cases such as these the Court "approach[es] a vagueness challenge with a critical eye); 24 V.S.A. § 4442) (holding that a Town Bylaw provided sufficient guidance to avoid standardless discretion).

[4] In JAM Golf, the Vermont Supreme Court held an ordinance to be vague when it merely required "development to be designed to protect wildlife corridors and habitat, and to protect scenic views" without providing standards on "how or when" development was to be restricted and fails to define "what in particular is to be protected."  In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 18.  Here, Vermont Supreme Court noted that ordinances cannot leave broad designations to the "unfettered discretion of the Environmental Court."  Id. (citing In re Handy, 171 Vt. 336, 349 (2000)).

3

applied. <u>Town of Westford v. Kilburn</u>, 131 Vt. 120, 124 (1973); <u>In re Pierce</u>, 2008 VT 100, ¶ 20. Where zoning regulations are ambiguous we interpret them in favor of the landowner. <u>Weeks</u>, 167 Vt. at 555 (citations omitted).

**a. Whether § 1203(A) of the Poultney Bylaws is vague and unenforceable.**

Concerning § 1203(A), Poultney Properties argues that the terms "maximum safety" and "particular consideration" are not a meaningful standards and subsection (A) fails to provide new or heightened standards that those set forth in the introductory paragraph and 24 V.S.A. § 4416. The Town and Mr. Vreeland assert both these terms provide a sufficient standard, enabling this Court to enforce ordinances and apply appropriate conditions consistent with § 1203(A). We agree that § 1203(A) is enforceable.

Section 1203(A) of the bylaw addresses "[m]aximum safety of vehicular circulation between the site and the street network" and notes "[p]articular consideration shall be given to visibility at intersections, to traffic flow and control, to pedestrian safety and convenience, and to access in case of an emergency." The term "maximum safety" acts as a standard by providing a specific location within which it operates and clearly identifying factors to be considered. See <u>Application of Carrier</u>, 155 Vt. 152, 155 (1990) (noting that a Commission was able to determine compliance with a Newport zoning regulation that required "maximum safety of vehicular circulation between the site and the street network" and "adequacy of circulation, parking and loading facilities with particular attention to safety"); see also <u>In re Woodstock Community Trust and Housing Vermont PRD</u>, No. 203-10-09 Vtec slip op. at 23 (Vt. Super. Ct. Envtl. Div. Oct. 14, 2011) (Wright, J); <u>Scott v. City of Newport</u>, 2004 VT 64, ¶ 2, 177 Vt. 491, 492. Here, the term "maximum" provides sufficient guidance, namely by delineating a degree of sensitivity, such that standardless discretion is avoided. See <u>In re Appeal of JAM Golf, LLC</u>, 2008 VT 110, ¶ 14 (explaining that "protect" is vague as it does not delineate a degree or level such as total or reasonable protection).

In a similar vein, the term "particular consideration" also provides an ascertainable standard by indicating a degree of sensitivity. See <u>Pelkey Final Plat Major Subdivision</u>, Nos. 172-12-12 and 30-3-12 Vtec slip op. at 26 (Vt. Super. Ct. Envtl. Div. Dec. 31, 2014) (Durkin, J) (stating zoning regulations contained "specific plans for site plan review" that directed the DRB to pay "particular consideration" preservation of various features of landscaping and screening). Here,

4

§ 1203(A) identifies key factors assessing particularity: visibility, safety, convenience, and emergency access.  In re LaBerge NOV, 2016 VT 99, ¶ 23 (indicating that a standard less vague when it is modified by factors following it); 29 Pleasant St. Design Plan Approval, No. 18-2-16 Vtec slip op. at 6–9 (Vt. Super. Ct. Envtl. Div. Sept. 23, 2016) (Walsh, J) (stating that while the standard "appropriate" was not defined, it was used in multiple contexts and modified by surrounding language such that it was considered enforceable).

We next look to the bylaws as a whole and its enabling statute, the Vermont Planning and Development Act (VPDA), 24 V.S.A. Chapt. 117.  Neither the bylaws nor the enabling statute define "particular consideration."  The VPDA does, however, in § 4302(d) require regulations to be based upon present conditions and future trends and growth, with "reasonable consideration . . . for the landowner, . . . to needs and trends of the municipality, . . . to the character of the area and to its peculiar suitability for particular uses in relationship to surrounding areas, and with a view to conserving the value of buildings."  See also In re LaBerge NOV, 2016 VT 99, ¶ 22 (holding that "the standard of reasonableness at the heart of the Town's noise ordinance is one that numerous courts have upheld against void-for-vagueness challenges").  This comports with § 1203: allowing development taking into consideration "appropriate conditions and safeguards" with respect to traffic access, circulation, parking, landscaping and screening, and to protect renewable energy resources.  Bylaws §1203.

Next, we look to the common dictionary definition of "particular."  Franks v. Town of Essex, 2013 VT 84, ¶ 8, 194 Vt. 595 ("Words that are not defined within a statute are given their plain and ordinary meaning, which may be obtained by resorting to dictionary definitions.").  The American Heritage dictionary defines "particular" as "attentive or concerned with details." American Heritage Dictionary of the English Language, (5th. ed. 2020); see also Webster's II New College Dictionary 56 (2nd ed. 2005).  In this context, giving "particular" consideration is a heightened standard attentive to details such as the safeguards and conditions dictated in § 1203.

In this case, by choosing the term "particular consideration" the Town has given the DRB some room to interpret what is "particular," in the context of the surrounding area's key factors. Here, the degree of flexibility does not rise to a "synonym for ad-hoc decision making that is essentially arbitrary," as it retains limitations in listing key factors.  In re Handy, 171 Vt. 336, 349

(2000). Given these parameters, the Town's bylaws are not standardless or overly discretionary. They specify sufficient conditions and safeguards to regulate vehicular circulation. Thus, as "particular consideration" provides adequate notice and does not allow arbitrary enforcement, evidence is required to demonstrate compliance.

**b. Whether § 1203(B) of the Poultney Bylaws is vague and unenforceable.**

Poultney Properties argues § 1203(B) provides no standard, fails to indicate what additional evidence is required for compliance, uses the aspirational and non-mandatory term "should," and uses the unclear standard "particular consideration." Poultney Properties does, however, concede that the language indicating parking standards is enforceable. The Town, joined by Mr. Vreeland, counter that while § 1203 (B) allows for flexibility in its language, this does not render it unenforceable. We agree that § 1203(B) is enforceable.

Here, § 1203(B) requires:

Particular consideration shall be given to the items in (A) above and the effect of noise, glare, or odors on adjoining properties. Refuse and service areas should be included in this consideration. Provisions for snow removal should also be made. The standards under Article VI Parking Requirements must also be met.

For the reasons explained above, the term "particular consideration" supplies an adequate standard as it indicates a degree of deliberation limiting arbitrary enforcement. We note that the § 1203(B) standard is modified in similar fashion as § 1203(A), in this case by noise, glare, and odor factors. In re LaBerge NOV, 2016 VT 99, ¶ 23.

Here, the term "should" does not deprive § 1203(B) of its enforceability. While the term "should" is aspirational in some contexts, a bylaw seeking to encourage flexible planning may include both general and specific standards to balance interests alternative to traditional development. See In re Pierce, 2008 VT 100, ¶ 24 (noting that in looking at general and specific requirements contained in the bylaw as a whole, there are sufficient standards for evaluate compliance); see also In re Handy, 171 Vt. 336, 348–349 (2000) (cautioning against inflexible requirements); In re Green Peak Estates, 154 Vt. 363, 368–369 (1990) (stating that a regional plan that dictated development "should be carefully planned" was enforceable); see 29 Pleasant St. Design Plan Approval, No. 18-2-16 Vtec at 6–9 (Sept. 23, 2016) (holding that the use of the language "where appropriate" imbues enforceable municipal zoning regulations with flexibility). Indeed, flexibility has long been a concern in in encouraging feasible development, specifically

though the use of the term "should."  See <u>Regan v. Pomerleau</u>, 2014 VT 99, ¶ 18–19.  In addition, § 2013(B) includes mandatory "shall" language specifically when discussing the applicable standard of "particular consideration."   Here, § 1203(B) is merely implementing flexibility concerning snow removal, while maintaining mandatory factors for considering adequacy of circulation, parking, and loading facilities.  Therefore, § 1203(B) is enforceable and establishes an adequate standard with which compliance may be demonstrated.

### c.   Whether § 1203(C) of the Poultney Bylaws is vague and unenforceable.

Poultney Properties argues § 1203(C) contains no enforceable regulatory standard under which to demonstrate compliance or what evidence is required to gain site plan approval under § 1203.  Subsection (C) addresses adequacy of landscaping and screening regard to achieving maximum compatibility and protection to adjacent property.  Here, § 1203 provides that "[p]articular consideration shall be given to the preservation of existing vegetation, visibility of unsightly or incompatible areas from the road and adjoining properties, and the adequacy of landscaping materials to meet seasonal conditions, soil conditions, and light on the site."

As explained above, the term "particular consideration" supplies an adequate standard. We note that the § 1203(C) standard is modified by factors including preservation of vegetation, visibility, and adequacy of landscaping materials.  <u>In re LaBerge NOV</u>, 2016 VT 99, ¶ 23.  We therefore decline to consider § 1203(C) as standardless.

### d.   Whether § 1203(D) of the Poultney Bylaws is unenforceable and applies.

Poultney Properties argues § 1203(D) is not applicable as all the buildings on the Property are preexisting nonconforming structures.  In the alternative, Poulntey Properties further contends that § 1203(D) does not establish a criterion or standard under which to demonstrate compliance.  Neither the Town nor Mr. Vreeland address whether § 1203(D) is applicable, but both maintain it is enforceable. Subsection (D) on the protection of renewable resources states that, "[p]articular consideration shall be given to the appropriate siting of buildings in order to maximize access for solar gain to the property and adjacent properties."   Bylaws § 1203(D). Consistent with our analysis above, "particular consideration" is a sufficient standard and therefore enforceable.

We next address whether § 1203(D) is applicable when Poultney Properties is not proposing construction of any new buildings on the Property. The plain language of § 1203 (D) limits consideration of renewable resources to "siting of buildings." Poultney Properties' application seeks to accommodate the retail use by adding a loading area and altering the front entrance. Poultney Properties LLC Change of Use & SP App., No. 97-7-17 Vtec slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Nov. 26, 2018) (Walsh, J.). In our November 26, 2018 Decision, this Court recognized there existed a genuine dispute of material fact relating to landscaping, adequacy of screening, noise levels, and lighting pursuant to § 1203. Id. at 12 (clarifying that there is no present dispute concerning the siting or construction of additional buildings). As no new buildings are proposed on the Property, § 1203(D) is inapplicable.

For these reasons, we conclude §§ 1203(A)–(D) of the Poultney Bylaws are enforceable and require evidence demonstrating compliance. We therefore **DENY** Poultney Properties' motion in limine with respect to enforceability of § 1203 and **GRANT** with respect to the inapplicability of § 1203(D).

**II.      Whether § 1203(B) of the Poultney Bylaws is limited to vehicular noise.**

Poultney Properties argues that § 1203(B) is limited to vehicular noise and does not include noise-related impacts more broadly associated with the operation of a retail store on the Property. The Town concedes that §1203(B) is indeed limited by its language to noise-related impacts associated with vehicles accessing the site. The Town, joined by Mr. Vreeland, argue that noise considerations, regardless of source, are still considered under the general provisions of the Poultney Bylaws Art. XIV General Regulations § 1429(A).

Generally, when interpreting independent statutory schemes with overlapping subject matters, "we prefer to first look for a construction that will harmonize the seemingly-inconsistent statutes." Vt. Tenants, Inc. v. Vt. Hous. Fin. Agency, 170 Vt. 77, 83, 742 A.2d 745, 749 (1999). When there exist conflicting statutory provisions, the specific provision prevails as an exception to the general. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19 (citing Smith v. Desautels, 2008 VT 17, ¶ 17, 183 Vt. 255); In re Constr. & Operation of a Meteorological Tower, 2019 VT 20, ¶ 19; Pearson v. Pearson, 169 Vt. 28, 36 (1999). Indeed, "[w]hen general and specific provisions are employed in ordinances, where there are two provisions, one general and the other specific and relating to only one subject, the specific provision ordinarily must prevail." Id.

8

(quoting 6 E. McQuillin, The Law of Municipal Corporations § 20:63 (3d ed. rev.2007)).  While the specific provision generally prevails, bylaw provisions must be consisted with the enabling statute.  In re John A. Russell Corp., 2003 VT 93, ¶ 25, 176 Vt. 520 (mem.) (citing In re White, 155 Vt. 612, 618 (1990)).

Here, § 1429 concerns general performance standards which state that, "[n]o noise which is excessive at the property line and represents a significant increase in noise levels in the vicinity of the development so as to be incompatible with the reasonable use of the surrounding area shall be permitted."  In contrast, Article XII § 1203 is specific to site plan approval and review procedures.  It directs the DRB in what factors to consider noise impacts in the context of evaluating adequacy of circulation, parking, and loading facilities. Bylaws § 1203(B).  In keeping with the general principles of statutory construction, § 1203(B) is specifically tailored to site plan approvals and limits noise to vehicle-related impacts.  We therefore **GRANT** Poultney Properties' motion in limine limiting the scope of issues for trial concerning noise impacts pursuant to § 1203(B).

### III.     Whether § 711 is applicable and if so, whether § 711 is limited to the expanded portion of the project.

In our November 26, 2018 Decision on cross-motions for summary judgment (Decision), this Court recognized that §§ 1411 and 601(E) do not apply as the Property contains preexisting nonconforming structures and additionally  stated that "[i]t is not clear whether the renovations of 61 Beaman Street to prepare it for a retail use, especially construction of the new loading area, are enlargements under § 710 that are either prohibited or require enhanced review under § 711."  Poultney Properties, No. 97-7-17 Vtec at 12–13 (Nov. 26, 2018). As a result, this Court declined to decide Questions 1 and 4 of the Amended Statement of Questions and denied Poultney Properties' request for site plan approval.  In the motion addressed here, Poultney Properties seeks and order clarifying if § 711 applies and if so, whether an § 711 would be limited solely to the proposed enlargement. Neither the Town nor Mr. Vreeland have addressed this issue.

Poultney Properties presents two concerns regarding § 711.  First, this Court held the proposed use of the Property as a retail store is a permitted use in this District under the bylaws. Id. at 5–10.  Poultney argues as § 711 only applies to "expansions of a nonconforming use" it is

9

inapplicable. Second, Poultney Properties contends that should § 711 apply, only the enlargement is under review rather than the entire preexisting nonconforming structure.

Our prior Decision elaborated on a new statutory scheme developed in In re Snelgrove, in which the Vermont Supreme Court ceased to classify structural nonconformity as a nonconforming use of property.[5] Id. at 8 (citing In re Snelgrove Permit (Boathouse Replacement), No. 2009-162, 2010 WL 286742 (Vt. Jan. 15, 2010) (unpub. mem.)). As a result, municipalities were given discretion in regulating different types of nonconformities. Id. We ultimately concluded the Property contains nonconforming structures and the Poultney bylaws do not define nonconforming structures as nonconforming uses. Id. at 9; Bylaws §§ 701, 707.

Here, § 711 addressing adverse effects provides that "[i]n considering whether or not a change, resumption, or expansion of a *nonconforming use* or *structure* will adversely effect the surrounding neighborhood the [DRB] shall make findings on [relevant factors]." Bylaws § 711 (emphasis added). Consistent with our prior Decision and in the interest of clarification, as the retail store constitutes a single permitted use, § 711's "change . . . of a nonconforming use" does not apply to the use of the Property for retail purposes.[6] Id. at 6–7 (noting that Property has a "distinct and independent" single permitted industrial use and the "Bylaws allow and encourage retail and light industrial uses in the Village Industrial District"). The remaining element of § 711, however, concerning the change or expansion of a nonconforming *structure* remains before the Court.

Second, we address whether, assuming there is an enlargement, § 711 applies to the building in its entirety or solely to the enlargement. We first look to the plain language of the bylaw; with the purpose of giving effect to legislative intent. See In re Weeks, 167 Vt. 551, 554 (1998); see In re Trahan, 2008 VT 90, ¶ 20 (stating that words are interpreted to give effect to the whole and every part).

---

[5] Snelgrove Permit is not binding precedent because it was decided by a three-judge panel but we consulted it as the only source of guidance on the impact of § 4408's repeal and the changes in statutory language.

[6] Our Decision noted that "Poultney Properties proposes to change the use of the nonconforming structure at 61 Beaman from a permitted industrial use to a permitted retail use, "which is looked upon as a favorable conversion. Poultney Properties, No. 97-7-17 Vtec at 12–13 (Nov. 26, 2018) (citing Wesco, 2006 VT 52, ¶ 26 (citation omitted)).

Here, the plain language indicates § 711 is not limited solely to the expanded portion of the building as § 711 directs the DRB to make findings of factors that address the property in its entirety. Factors that best exemplify this include considerations for the history and use of the lot, location of existing or proposed structures on the lot and the relation of those structures to those on adjoining lots and to the dimensional requirements of the Zoning Regulations, and the objective of the Village Industrial District in providing a "limited expansion of existing industrial developments." Bylaw § 201(D)(1); § 711 (D). In addition, the Court is directed to consider a "change, resumption or expansion." In re 204 N. Ave. NOV, 2019 VT 52, ¶ 7 (indicating that when interpreting a statute, the court will presume that language is inserted advisedly so as to avoid surplusage). Inclusion of the terms "change" and "resumption" indicate reformation of existing property as a whole. In re Gregoire, No. 2002-080, 2002 WL 34422448, at *2 (Vt. Sept. 2002). Thus, the purpose of this district and the plain language of the bylaws are aimed at gradual development and minimization of nonconforming structures.

In looking to § 701, the bylaws permit the change, resumption, or enlargement of a nonconforming structure provided that it "does not increase the extent of nonconformance by expanding beyond the existing lines of nonconformance further . . . ." Bylaws § 701(C). This Court has considered expansion provisions such as these as involving review of nonconformity by looking to the property in its entirety when determining adverse impacts. See Kodis v. Town of Bristol, No. 43-3-14 Vtec slip op. at 4–5 (Vt. Super. Ct. Envtl. Div., Dec. 19, 2014) (Durkin, J.) (discussing an addition which would "not extend further into a setback than the original footprint, [but] would increase the *total* volume of the structure); see also In re Berger & Katz, No. 119-7-10, slip op. at 15 (Vt. Super. Ct. Envtl. Div., March 7, 2013) (Durkin, J.); In re Carrigan Conditional Use & Certificate of Compliance, 2014 VT 125, ¶ 34, 198 Vt. 438 (holding that the enclosure of applicants' deck increased the total volume of the structure and therefore increased the degree of noncompliance).

Considering the intent and plain language of §§ 701, 711 of the bylaws, we cannot, absent a clear indication, limit the scope of review to an enlargement alone. We therefore clarify that § 711 is not applicable for nonconforming use because the Property proposes a permitted use and assuming there is an enlargement, § 711 would not be limited in its application to the expansion alone.

11

## Conclusion

For the reasons stated above, We **DENY** Poultney Properties' motion concerning the enforceability of §§ 1203(A)–(D) concluding that these provisions are enforceable. We also **GRANT** Poultney Properties' motion in limine with respect to the limitation of § 1203(B) to noise-related impacts associated with vehicles and the inapplicability of § 1203(D).

We also clarify that the nonconforming use prong of § 711 is not applicable because the Property proposes a permitted use. The nonconforming structure prong of § 711, however, remains before the Court. Finally, should an enlargement of the Project building be proposed, § 711 would not be limited in its application to the expansion alone.

So ordered.

Electronically signed on May 18, 2020 at 02:44 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
David R. Cooper (ERN 4756), Attorney for Appellant Poultney Properties, LLC.
Interested Person Concerned Citizens of Poultney
Gary R. Kupferer (ERN 3547), Attorney for Interested Person Town of Poultney
Interested Person John Swenor
Interested Person Neal C. Vreeland
Interested Person Linda S. Pepler
Interested Person Walter Ribeiro
Interested Person Rebecca Ribeiro
For Informational Purposes Only Charles Hall
Rodney E. McPhee (ERN 3612), Attorney for party 2 Co-counsel