STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 45-5-15 Vtec |
|---|---|
| Purvis Nonconforming Use | DECISION ON MOTION |

Appellant Luke Purvis appeals a determination from the City of Burlington Development Review Board ("DRB") concerning the parking area behind the residence at his property at 164 North Willard Street in the City of Burlington ("City"). Appellant argues that his parking is protected by 24 V.S.A. § 4454, which establishes a fifteen-year statute of limitations upon the enforcement of zoning violations, and also that his parking is a nonconforming use. He also argues that a provision in the City of Burlington Comprehensive Development Ordinance ("CDO") that attempts to establish that a zoning violation will be deemed abandoned after a sixty-day period of non-use is (1) unconstitutionally vague and (2) preempted by the state nonconforming use statute, see 24 V.S.A. § 4412(7), which establishes a six-month period of abandonment for nonconforming uses. Appellant has moved for partial summary judgment on his vagueness and preemption arguments.

Appellant is represented by Attorney Nicole Killoran, and the City is represented by Attorney Kimberlee Sturtevant. Joseph and Theresa Cleary, who are Interested Persons in this appeal, are self-represented.

**Factual Background**

For the sole purpose of deciding the pending motions, we recite the following facts, which we understand to be undisputed unless otherwise noted. Some of the facts listed below were drawn from the Court's examination of materials submitted in support of the motions, rather than the parties' statements of facts. See V.R.C.P. 56(c)(3) (allowing a court to consider materials cited in the parties' statements of facts and other materials in the record). We do not understand the facts drawn from these materials to be disputed.

1.      Appellant Luke Purvis owns a parcel of land at 164 North Willard Street in Burlington that has two buildings on site: the front building has two or more residential apartments and the rear building is a two-car garage.[1]

2.      Appellant's parcel benefits from an easement for ingress and egress over a triangular portion of a neighboring parcel to the south, owned by Joseph Cleary.

3.      In June of 2014, Mr. Cleary complained to the City that Appellant had expanded the parking to the rear of Appellant's building without first receiving a zoning permit.[2]

4.      On July 22 2014,[3] the zoning specialist sent Appellant a notification letter that advised Appellant that a complaint had been received that he had expanded the parking occurring in the rear of his property.  In this letter, the zoning specialist invited Appellant to refute the complaint and provide evidence in support of his position.

5.      The zoning specialist then made physical inspections of Appellant's property on several occasions over the months of September, October, and November, 2014.  On January 28, 2015, the zoning specialist inspected the property again, while visiting with Appellant, to inspect the rear portion of his property and to determine whether parking was or had been occurring or had been expanded.  The zoning specialist discovered "disturbed areas" on the property (or properties), but no parking was observed during any of these visits.

6.      As a follow up to these visits to the property, the zoning specialist wrote to Appellant on January 29, 2015, advising that a determination had been made that no parking had occurred on Appellant's property during the months visited.  The zoning specialist further advised that

---

[1] A copy of a photo of Appellant's garage and a portion of his driveway was attached as page 2 of Exhibit 5 to Appellant's pending motion.

[2] The facts currently before the Court make it unclear whether this initial complaint alleged that Appellant expanded parking onto the easement area or onto some other portion of Appellant's property.  The February 13, 2015 decision from the DRB references an "expansion of parking . . . [on] a strip of land, approximately 2' (w) x 60' (l) on the south side of the driveway and north of the easement on the adjacent property . . . ."  In subsequent language that appears to reference a different portion of Appellant's land, a motion was made that the DRB "highly recommend that the owner of 164 North Willard submit a parking plan with lot coverage as it appears an expansion of parking has occurred on the north side of the driveway."  That motion, which also recommended that the DRB "uphold the determination of no violation by the Code Enforcement Officer," passed on a vote of 5-0-0.  The legal issues raised in this motion do not require us to determine where Appellant's alleged parking expansion occurred.

[3] This July 22, 2014 letter, a copy of which was attached to Appellant's motion for summary judgment as Exhibit 4, is incorrectly referenced as a "September 22, 2014 notification letter" in the subsequent letter from the zoning specialist dated January 29, 2015, a copy of which was attached to Appellant's motion as Exhibit 5.

2

the evidence submitted, including affidavits that Appellant submitted in response to the complaint, was "found inconclusive to determine that the 15-year enforcement statute of limitations is applicable to" Appellant's property.

7.     The zoning specialist also included the following directive in her January 28, 2015 letter: "All disturbed areas, as a result of previous parking, must be restored to green space by May 1, 2015; to conform to coverage allowances and respect of the setback."

8.     Appellant appealed these determinations to the DRB on the ground that his parking was protected under the fifteen-year statute of limitations in 24 V.S.A. § 4454(a).

9.     In its decision, the DRB clarified that the zoning specialist's determination only applied to the strip of land between Appellant's driveway and the southern boundary of his property, not the triangular easement on Mr. Cleary's property.[4]  The DRB concluded that Appellant had abandoned parking on this area for more than sixty days.

## Discussion

Appellant has moved for partial summary judgment on his arguments that Section 5.3.2 of the CDO is unconstitutionally vague and that it is preempted by the state nonconforming use statute (Questions 1 and 3 of his Statement of Questions, respectively).  The City opposes the pending motion, asserting that Appellant misconstrues both the statute of limitations and the concept of lawful, pre-existing nonconformities.

We begin our analysis by noting that this Court is directed to grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).[5]  Because we find that

---

[4]  The City has objected to the use of the phrase "Southern Parking Area" to refer to this strip of land between the driveway and the southern boundary of Appellants' property, since the city "does not recognize this as a parking area."  See Appellee's Opp. to Mot. for Summ. J. at 6 (filed Sept. 23, 3015).  However, we do not understand the City to dispute that it is only this strip of land that is the subject of the DRB's determination.

[5]  Because the two questions at issue in this motion are pure questions of law, only the second prong of this test is at issue in this motion.  In his motion for summary judgment, Appellant included a statement of additional facts in an effort to substantiate his argument (which he makes for the first time on appeal) that his parking is a lawful, preexisting nonconforming use dating back to 1966.  See Appellant's Additional Statement of Face in Support of Mot. for Summ. J. on Questions 1 & 3 (filed Aug. 18, 2015).  The City objected to the inclusion of these facts because the questions at issue in the motion were purely legal and did not require substantiating facts (note—all facts included in the background section of this decision were drawn from a stipulated statement of facts).  The City also asked that, if we did consider these additional facts relevant to the disposition of this motion, we afford the City an opportunity to present evidence on the zoning ordinance in place in 1962.  In Appellant's

3

Section 5.3.2 of the CDO is not unconstitutionally vague and that it is not preempted by the state nonconforming use statute, we deny Appellant's motion for summary judgment on both questions.[6]

I.     Vagueness

Appellant argues that Section 5.3.2 of the CDO is unconstitutionally vague, both on its face[7] and as-applied, because it "forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application." See Appellant's Mot. for Summ. J. (citing In re James GHIA, No. 31-2-03 Vtec, slip op. at 8 (Vt. Envtl. Ct. Nov. 19, 2003) (Wright, J.)).

The Due Process Clause United States Constitution imposes minimum clarity requirements for all statutes and ordinances. See In re Handy, 171 Vt. 336, 345 (2000). A vague statute or ordinance can offend due process either because it is so vague that it fails to give landowners notice of what is prohibited, or because it imposes so few limits on a decision-maker's discretion that it will lead to arbitrary decision-making. See In re Beliveau NOV, 2013 VT 41, ¶ 15, 194 Vt. 1.

When a party challenges a law for failing to provide adequate notice, we must determine whether a person of common intelligence has fair warning of what is prohibited, considering the plain text of the challenged provision, the ordinance as a whole, the legislative history, relevant case law, and other extrinsic aids. In re Highlands Development Co., No. 194-10-03 Vtec, slip op. at 15 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.).

Where a civil ordinance implicates only economic (not constitutional) rights, the bar for finding the ordinance void-for-vagueness is high. See id. (quoting In re Rusty Nail Acquisition,

_____

reply, he conceded that the Court needs only "hypothetical" facts for the review of this motion. See Appellant's Reply in Support of Mot. for Summ. J. at 3 (filed Oct. 14, 2015). We agree that the current motion involves pure issues of law, and that we need not consider the additional facts regarding Appellant's nonconforming use status for the purposes of deciding this motion.

    [6] The City has not cross-moved for summary judgment.

    [7] Because facial vagueness challenges are only available where a statute or ordinance threatens First Amendment rights, Maynard v. Cartwright, 486 U.S. 356, 361 (1988); see also State v. Cantrell, 151 Vt. 130, 133 (1989), and because Appellant makes no claim that Section 5.3.1 threatens his First Amendment rights, we only consider Appellant's as-applied challenge.

Inc., 2009 VT 68, ¶ 12, 186 Vt. 195); see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498–99 (1982).

Section 5.3.2 of the CDO reads:

**Sec. 5.3.2 "Bianchi" controlled uses, structures, and lots.**
Although not subject to enforcement under Article 2, uses, structures, and lots which are deemed to be controlled by the *Bianchi* decision, and the subsequent enactment of 24 VSA Sec. 4454, shall be considered violations that are not considered legal to any extent and shall in no event be granted the consideration or allowances of nonconforming structures, uses, and lots. Thus, no change, alteration, enlargement, and reestablishment after discontinuance for more than sixty (60) days or reconstruction after an occurrence or event which destroys at least 50% of the structure in the judgment of the city's building inspector shall be permitted, except to a conforming use, structure, or lot.

In the Bianchi decision, the Vermont Supreme Court held that a zoning violation could constitute an encumbrance on title that violates the covenant against encumbrances in a warranty deed where the violation would have been obvious from an examination of municipal records and "the violation substantially impairs the purchaser's use and enjoyment of the property." Bianchi v. Lorenz, 166 Vt. 555, 558, 561 (1997). The Bianchi decision had no bearing on a municipality's ability to enforce zoning violations.

Afraid that Bianchi would hinder real estate transactions, the Vermont Legislature passed legislation in 1998 that implemented a number of reforms. 1999, No. 125. First, this statute explicitly superseded the Bianchi holding. See id. § 2, codified at 27 V.S.A. § 612(a) ("Notwithstanding the majority decision in Bianchi v. Lorenz (1997), for land development, as defined in 24 V.S.A. § 4303(10), no encumbrance on record title to real estate or effect on marketability shall be created by the failure to obtain or comply with the terms or conditions of any required municipal land use permit as defined in 24 V.S.A. § 4303(11)."). The statute also attempted to modernize and standardize municipal recording, both for deeds and for zoning violations. See id. § 2, codified at 24 V.S.A. §§ 1154, 1161. Finally, the Act established a ten-year statute of limitations for enforcement of zoning violations. See id. § 2.

Unsatisfied with the effects of the 1998 Act, the Legislature passed Act 25 in 1999 in an attempt to further clarify the law surrounding zoning violations and title transfer. See 1999, No. 46, § 1. The 1999 Act maintained the provisions superseding Bianchi, enhanced the

provisions standardizing municipal record-keeping, and extended the statute of limitations for enforcement of zoning violations to fifteen years. See 1999, No. 46, § 2, codified at 24 V.S.A. §§ 1154, 1161; 27 V.S.A. § 612(a); 24 V.S.A. § 4454.

Given this history, the reference to the Bianchi decision in Section 5.3.2 is confusing for two reasons. First, Bianchi is no longer good law, so nothing is "controlled by the *Bianchi* decision." Second, even if Bianchi were still good law, Bianchi dealt with the covenant against encumbrances in a warranty deed, and it has no obvious relevance to ordinary zoning enforcement. Read literally, uses "controlled by the *Bianchi* decision," might mean "uses, structures, or lots with zoning violations that would constitute encumbrances on title under Bianchi and that are currently subject to pending breach-of-covenant litigation." Read slightly less literally, it might mean "uses, structures, and lots with zoning violations that 'substantially impair[] the purchaser's use and enjoyment of the property'" or "uses, structures, and lots with zoning violations that would be discoverable through a search of the municipal records." See id. at 558, 560–61.

However, in considering a vagueness challenge, we do not consider the challenged provisions in isolation; we will consider the statute or ordinance as a whole, in light of relevant case law and legislative history. In re Highlands Development Co., No. 194-10-03 Vtec, slip op. at 15 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.). The section that precedes Section 5.3.2 sheds some light on the intended meaning of the Bianchi reference. Section 5.3.1 reads, "This Part will also address 'Bianchi-controlled situations', in which a zoning violation may not [be] subject to enforcement under the standards set forth by the Vermont Supreme Court in the case entitled *Bianchi v. Lorentz* [sic] and later codified in 24 V.S.A. Sec. 4454." CDO § 5.3.1. Section 5.3.1 mischaracterizes Bianchi because Bianchi did not render zoning violations unenforceable. From Section 5.3.1, however, we can discern that the drafters considered "Bianchi" to be a kind of shorthand for the entire statutory body of law that the case prompted, including the fifteen-year statute of limitations on zoning violations in Section 4454. From this, we conclude that the reference to Bianchi in Section 5.3.2 was not meant to limit or expand the scope of violations

6

controlled by Section 5.3.2. Rather, Section 5.3.2 applies to all violations claiming the protection of the statute of limitations.[8]

We believe an ordinary reader informed about <u>Bianchi</u> and the ensuing legislation could likewise discern this meaning. At the very least, Section 5.3.1, which explains the ordinance drafters' understanding of <u>Bianchi</u>, gives the average landowner sufficient notice that Section 5.3.2 might impose a sixty-day period of abandonment for all zoning violations subject to the statute of limitations in 24 V.S.A. § 4454. This is sufficient "definite fair warning as to proscribed conduct" in the less-stringent context of a land use regulation. See <u>In re Rusty Nail Acquisition, Inc.</u>, 2009 VT 68, ¶ 16, 186 Vt. 195 (quoting <u>Brody v. Barasch</u>, 155 Vt. 103, 111 (1990)).

We agree with Appellant that the Burlington ordinance at issue here is not a model of clarity. But we cannot agree that the ordinance is constitutionally infirm. Using ordinary tools of statutory interpretation, including surrounding provisions and legislative history, the ordinary landowner has sufficient warning that any claim to the protection of the statute of limitations concerning enforcement of zoning violations may be subject to a sixty-day period of abandonment.

II.     <u>Preemption</u>

Appellant next challenges the sixty-day abandonment period in Section 5.3.2 on preemption grounds. Appellant argues that the reference to <u>Bianchi</u> in Section 5.3.2 of the CDO means that Section 5.3.2 arguably applies to nonconformities and not merely to violations protected by the statute of limitations in 24 V.S.A. § 4454. If this is so, Appellant argues, the sixty-day period of abandonment in Section 5.3.2 is preempted by 24 V.S.A. § 4412(7)(A)(i), which provides that municipalities may "specify a time period that shall constitute abandonment or discontinuance of [a] nonconforming use, provided the time period is not less than six months."

---

[8] We recognize that this interpretation essentially ignores portions of the statutory text, and that we avoid interpretations that render statutory provisions mere surplusage. See <u>State v. Kreth</u>, 150 Vt. 406, 409 (1988). However, we will ignore portions of a statute or ordinance that have been used inadvertently if necessary to effect legislative intent. See <u>id</u>. (citing <u>State v. Stevens</u>, 137 Vt. 473, 481 (1942)).

If Section 5.3.2 of the Burlington CDO attempted to establish a sixty-day period of abandonment for nonconforming uses, we agree that it would be preempted by the six-month floor in the state nonconforming use statute, 24 V.S.A. § 4412(7)(A)(i). However, we cannot agree that Section 5.3.2 could be plausibly interpreted to apply to nonconforming uses.

"Nonconforming use" is a term of art. It does not mean "any use that does not conform to present land use regulations." Rather, a nonconforming use is a use that was legal when it began, but that does not conform to land use regulations established since its inception. 24 V.S.A. § 4303 (defining nonconforming use). See 24 V.S.A. § 4412(13)–(15). A nonconforming use is therefore *not* a zoning violation. It is a fully legal use, which is why we often refer to these uses as "lawful preexisting nonconforming uses." See, e.g., In re Bay Harbor Marina, Inc., No. 118-8-13 Vtec, slip op. at 5 (Vt. Envtl. Div. Apr. 4, 2014) (Durkin, J.). Conversely, a lot or structure that was *illegal* when it began, but which is unenforceable because it has been ongoing for more than fifteen years, see 24 V.S.A. § 4454, is *not* a nonconforming use: no use can qualify for nonconforming use status if it was illegal when it began. See City of St. Albans v. Hayford, 2008 VT 36, ¶ 11, 183 Vt. 596.

Appellant misunderstands this distinction[9] and argues that the reference to Bianchi in Section 5.3.2 can be said to implicate nonconforming uses. We do not agree. The Bianchi case dealt only with zoning *violations*, not nonconforming uses; it held that, when a zoning *violation* substantially impairs the use or enjoyment of property, and when the *violation* would be evident from examining municipal records, the *violation* can be an "encumbrance" on title. Bianchi v. Lorenz, 166 Vt. 555, 558, 561 (1997). Nonconforming uses are not violations—they are fully lawful uses. Bianchi therefore does not implicate nonconforming uses.[10]

---

[9] Appellant has characterized nonconforming uses as "properties that are in fact non-conforming in that they were sold with a pre-existing zoning *violation* that pre-dated the applicable ordinance." See Appellant's Mot. for Summ. J. at 7 (filed Aug. 18, 2015) (emphasis added). These "violations," Appellant argues, could arguably be subject to Bianchi.

[10] We also note that, even if Bianchi were somehow to apply to nonconforming uses, we have interpreted the statute to essentially govern only those zoning violations claiming the protection of the statute of limitations. See Part I, supra. The statute of limitations does not apply to nonconforming uses, since nonconforming uses are fully lawful and do not require the protection from an enforcement action that a statute of limitations affords. Thus, even if Bianchi applied to nonconforming uses, Section 5.3.2 still would not, and would therefore not be preempted by the statutory nonconforming use abandonment period in 24 V.S.A. § 4412(7)(A).

8

Because Section 5.3.2 plainly does not apply to nonconforming uses, we see no conflict between Section 5.3.2 and the nonconforming use statute, 24 V.S.A. § 4412(7)(A). The nonconforming use statute forbids municipalities from establishing a period of abandonment for nonconforming uses that is shorter than six months. § 4412(70(A)(i). Burlington has not done this. Rather, the City has established a sixty-day period of abandonment for zoning violations that are protected from enforcement by the statute of limitations in 24 V.S.A. § 4454. Since zoning violations protected by the statute of limitations are distinct from nonconforming uses, Burlington's sixty-day period of abandonment in Section 5.3.2 is not preempted by the nonconforming use statute.[11]

## Conclusion

We conclude that Section 5.3.2 of the Burlington Comprehensive Development Ordinance is not unconstitutionally vague. We also conclude that, because it does not apply to nonconforming uses, it is not preempted by the nonconforming use statute, 24 V.S.A. § 4412(7). We therefore **DENY** Appellant's motion for summary judgment.

Electronically signed on January 27, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

---

[11] We note that this is the only preemption argument Appellant presented in both his Statement of Questions and his motion for summary judgment—Appellant did not argue that the statute of limitations itself preempts municipalities from establishing periods of abandonment for protected zoning violations.