STATE OF VERMONT

SUPERIOR COURT                                         ENVIRONMENTAL DIVISION
                                                       Docket No. 105-9-19 Vtec

---

**Town of Pawlet v. Daniel Banyai**

---

### Decision on the Merits

The Town of Pawlet ("Town") brings this enforcement action seeking a declaratory judgment, injunctive relief, penalties, and attorneys' fees in connection with alleged zoning violations on the property of Daniel S. Banyai ("Mr. Banyai"), located at 541 Briar Hill Road in West Pawlet ("the Property"). The Town alleges that Mr. Banyai has made several physical improvements to the Property for the purpose of a new, albeit unpermitted use as a firearms training facility ("the Project"). The Project is comprised of certain structures along with outdoor shooting ranges.

The Town is represented in these municipal enforcement proceedings by Merrill E. Bent, Esq. Mr. Banyai represents himself.

### Procedural History

This action has a somewhat longer procedural history than most of the municipal enforcement actions that come before this Court. The length of this proceeding is understandable, given the process that has been afforded to Mr. Banyai, including during a review of his prior applications and claims both before the Town of Pawlet Zoning Administrator ("ZA"), Town of Pawlet Development Review Board ("DRB") and this Court. We summarize that procedural history to provide some context for our Findings of Fact, Discussion, and Conclusions of Law, recited below. This procedural history has been gleaned from the unappealed and now final determinations by the DRB and this Court. *See* In re Banyai Variance, No. 53-5-18 Vtec, slip op. at 2–4 (Vt. Super. Ct. Envtl. Div. Jan 4, 2019) (Walsh, J.) [hereinafter Banyai Variance].

The Town's pending claims against Mr. Banyai fall into two general categories: (1) commencing construction of buildings and shooting ranges on his property without first securing

the needed municipal land use permits, and (2) changing the use of his property without securing the needed municipal land use permits.

Prior to his purchase, Mr. Banyai's property was undeveloped. The only permit he has secured allows for the construction and use of a garage with an apartment.

On December 5, 2017, Mr. Banyai filed an application for a zoning permit with the ZA, seeking approval for a "school." On January 2, 2018, the ZA denied his application, stating that Mr. Banyai's property did not have road frontage and was served by a thirty-foot wide right-of-way ("ROW") over adjoining lands; the ROW did not conform to the current zoning regulations that required a land-locked property proposed for development to be served by a ROW of at least 50 feet in width.

Mr. Banyai then sought a variance for his 30-foot right of way.[1] After a hearing on remand from this Court, held June 20, 2019, the DRB denied Mr. Banyai's variance application in a decision dated July 11, 2019. Banyai Variance, No. 53-5-18 Vtec at 8–9 (Jan 4, 2019). Mr. Banyai was served with the DRB's decision and acknowledged receipt of it by responding to the Town via email on July 11, 2019. *See* In re: Variance Application of Daniel Banyai, Findings of Fact & Decision, at 3–5 (Town of Pawlet Dev. Rev. Bd. Jul. 11, 2019) (concluding that the five criteria for variance were not satisfied pursuant to Pawlet Zoning Bylaws and 24 V.S.A. § 4469(a)). Mr. Banyai did not appeal that DRB decision.

After the Town filed its zoning enforcement complaint, Mr. Banyai filed a general denial of the Town's claims and asserted several challenges to the Town's action. Within these challenges, Mr. Banyai asserted that he was "attempting to defend [his] property rights, family's rights, and individual civil liberties." *See* undated correspondence from Mr. Banyai filed Nov. 6, 2019, at 1 (hereinafter Banyai Response). Mr. Banyai's Response does not include specific responses to the numbered paragraphs in the Town's Amended Complaint, which includes

---

[1] Mr. Banyai's variance application came in the form of an April 1, 2018 letter he titled: "Reference: Zoning Appeal," even though his letter was submitted four months after the ZA had denied his application to construct and use a school. When the Town of Pawlet Development Review Board ("DRB") concluded that Mr. Banyai's 30' ROW was pre-existing and therefore lawful, neighbors to Mr. Banyai appealed that determination to this Court. Ultimately, this Court determined that the ZA's conclusion that Mr. Banyai's ROW was undersized had become final when Mr. Banyai did not file a timely appeal. *See* In re Banyai Variance, No. 53-5-18 Vtec at 8–9 (Jan 4, 2019). The Court remanded the matter back to the DRB to consider Mr. Banyai's letter as a request for a variance.

allegations that Mr. Banyai was operating an unpermitted firearms training facility and had built several structures and outdoor shooting ranges without the needed zoning permits. *See* Town of Pawlet Amended Complaint filed Sept. 18, 2019, at ¶¶ 6–9.

Mr. Banyai also represented in his Response that he had "shared these circumstances [i.e.: the alleged violations of his and his family's civil rights] over the last 20+ months to [sic] the State Attorney General and the Federal Bureau of Investigations [sic] Hate Crimes Unit . . .." Banyai Response at 3. Mr. Banyai has not shared with this Court any replies that he may have received from those authorities.

The Town served Mr. Banyai with a Notice of Alleged Zoning Violations dated August 29, 2019 ("the NOV"), a copy of which was attached to the Town's Amended Complaint and was then admitted into evidence at the December 16, 2020, Merits Hearing ("the Merits Hearing") as Town Exhibit D. Mr. Banyai did not timely appeal the NOV.

The Court was called upon to address several pre-trial motions, including a summary judgment motion by the Town. The Court denied the Town's request for a total summary judgment, concluding that it must conduct an evidentiary hearing before it could render determinations on the Town's claims for declaratory and injunctive reliefs, fines, and reimbursement of attorneys' fees. The Court, however, granted the Town's motion in part by concluding that Mr. Banyai was duly and legally served with the NOV and failed to timely appeal the NOV served upon him, thus causing the NOV and the factual allegations and legal conclusions contained in it to become "final and binding." Town of Pawlet v. Banyai, No. 105-9-19 Vtec, slip op. at 5, 7 (Vt. Super Ct. Envtl. Div. June 5, 2020).

Nothing revealed during our Merits Hearing caused this Court to reconsider or revise its interlocutory determinations in the June 5, 2020 summary judgment decision. Those factual and legal determinations are therefore incorporated into this Merits Decision. *See e.g.,* Myers v. LaCasse, 2003 VT 86, ¶ 10, 176 Vt. 29 ("Indeed, the grant of a motion for summary judgment by itself is an interlocutory order and not a final judgment.") (*citing* Powers v. Hayes, 170 Vt. 639, 640 (2000) (mem.)); *see also* Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 182 (1987). We therefore next turn to our determinations below of the Factual Findings that are material to the

remaining legal issues: what, if any, declaratory, injunctive, and monetary reliefs should be afforded to the Town for its claims against Mr. Banyai.

We note here for the purpose of providing context that no site visit of the Property was conducted. In a final pre-trial telephonic conference held on November 9, 2020, the Town's attorney advised that the Town had been unable to enter upon Mr. Banyai's property to determine the status of the unpermitted structures and activities. In response, the Court concluded that it would first request that Mr. Banyai authorize the presiding judge and Town officials to visit his property. For this Court, because of its unique jurisdiction, site visits have often provided helpful context for the evidence that is introduced at trial.[2] *See* V.R.E.C.P. 2(e)(3) (stating that "site visits may be conducted when appropriate to assist the court in rendering a decision"); In re: Vermont RSA Limited Partnership d/b/a Verizon Wireless, 2007 VT 23 ¶3 (referencing observations made during a site visit); In re Herrick, 170 Vt. 549, 551 (1999) (mem.) (referring to a trial court decision site visit); *see also* In re Quechee Lakes Corp., 154 Vt. 543, 551–555 (1990) (stating that "judicial findings can be grounded on knowledge acquired from site visits" so long as they are not the exclusive basis for the findings and noting that information gained from site visits may be used determining whether parties satisfied their burden of proof) (*citing* Daigle v. Conley, 121 Vt. 305, 309 (1959). The Court therefore directed that Mr. Banyai provide his written response to the Town's site visit request by November 20, 2020, to be filed with the Court and a copy served upon the Town's attorney. *See*, Town of Pawlet v. Banyai, No. 105-9-19 Vtec, Sched. Order at 2 (Vt. Super Ct., Envtl. Div. Nov. 10, 2020). Mr. Banyai chose to not respond to this site visit request. The Court was therefore unable to conduct a site visit prior to trial.

At the close of the evidentiary portion of the merits hearing, the Town, through its counsel, requested that the Court immediately issue a preliminary injunction against Mr. Banyai, enjoining the operation of his firearms training facility. After affording the parties an opportunity to file post-trial memoranda, including in support of and in opposition to the Town's preliminary

---

[2] Indeed, this Court has often relied upon site visits for providing context to pending appeals. *See e.g.*, Appeal of Tepper, et al., No. 225-12-04 Vtec, slip op. at 8–10(Vt. Envtl. Ct. Feb. 08, 2006) (Durkin, J.) (noting that "site visits have been recognized as serving an important function in rendering a zoning or subdivision decision"); In re Eastview at Middlebury, Inc., No. 256-11-06 Vtec, slip op. at 7–8(Vt. Envtl. Ct. Mar. 27, 2008) (Durkin, J.).

injection request, the Court granted the Town's request.  *See* <u>Town of Pawlet v. Banyai</u>, No. 105-9-19 Vtec, slip op. at 3 (Vt. Super Ct., Envtl. Div. Jan. 21, 2021).

With this Procedural History as a primer, we turn to our Findings of Fact and Conclusions of Law

## Findings of Fact

Based upon the credible evidence presented at the December 16, 2020 Merits Hearing, the Court renders the following Findings of Fact.

1.      Mr. Banyai first acquired his 30± acre property at 541 Briar Hill Road in West Pawlet, Vermont ("the Property") in 2013.  Just last month, it appears that Mr. Banyai attempted to transfer the property to a son of his by way of a "Vermont Quit Claim Deed" dated January 5, 2021 and record on January 11, 2021, at Book 123, Pages 218–219 of the Town of Pawlet Land Records.[3]

2.      Prior to Mr. Banyai's 2013 purchase, and apparently for some time after his purchase, the Property was held as undeveloped land.  There was no evidence presented of any development activity on the Property during this time, either with or without the authority of a zoning permit.[4]

3.      The Property lies in the Agriculture and Rural Residential Zoning District ("the ARR District").  The area surrounding the Property consists of sparsely settled residential lots consisting of large tracts of land; the ARR District regulations lists the minimum lot size as 25 acres.  *See* Banyai Exhibit A.  There was no evidence presented at trial of any development in the vicinity of the Property that was not residential in character.

4.      The Property does not have direct road frontage.  It is served by a deeded 30-foot-wide right-of-way over neighboring lands.

5.      In 2011, prior to Mr. Banyai's purchase of the Property, the Town amended the Town of Pawlet Unified Bylaws ("Bylaws").  Those amendments included a provision that land locked parcels proposed for development must be served by a right-of-way that was at least 50 feet wide.  See Bylaws Art. V, § 4.

---

[3] A copy of this Quit Claim Deed was filed as Appendix A to the Town's January 15, 2012 post-trial brief.

[4] A prior owner of the Property, a Mr. Dunbar, applied for and received a zoning permit to construct a 24' by 24' camp on the Property on April 18, 2012.  Mr. Banyai presented a copy of this zoning permit, which was admitted at trial as Banyai Exhibit B.  There was no evidence presented that this permitted camp was ever actually built.

6. Briar Hill Road, particularly in the vicinity of Mr. Banyai's Property, is often used by walkers, horseback riders, and hunters.

7. Sometime in 2017, Mr. Banyai began operating a firearms training facility on the Property, using the business name of "Slate Ridge." This is a new use of the Property that was not authorized by a previously issued zoning permit.[5]

8. Around that same time, Mr. Banyai erected a 500-square-foot structure to serve the firearms facility, all without first acquiring a zoning permit.

9. Along with the structure, the training facility includes newly constructed outdoor shooting ranges. These shooting ranges were also developed without the necessary zoning permit.

10. On December 5, 2017, Mr. Banyai filed an application for a zoning permit with the ZA seeking approval for a "school" structure associated with the Project and for his use of the Property. In this application, Mr. Banyai defined the existing use of the Property as "Land" and the proposed use as "school."

11. On January 2, 2018, the ZA denied the application. The basis of the ZA's denial was that the "ROW [right-of-way] needs to be 50' (30' ROW)." In other words, the existing 30-foot right-of-way serving the Property was not in compliance with the current Bylaws.

12. On April 1, 2018, after the time for appeal had passed, Mr. Banyai submitted a letter to the DRB titled: "Reference: Zoning Appeal." Within the letter, Mr. Banyai included an application for a variance for the 30-foot right-of-way.

13. After a hearing on April 25, 2018, the DRB determined that the Property was a preexisting nonconformity. The DRB did not discuss or decide the merits of Mr. Banyai's variance application or the merits of the change of use application denied by the ZA. Neighboring landowners timely appealed the DRB decision to this Court on May 23, 2018.

14. Sometime between May 29, 2018 and June 4, 2018, while the neighbors' appeal was pending before this Court, Mr. Banyai applied for a zoning permit, based upon the DRB's

---

[5] This and subsequent Findings of Fact were first stated in this Court's decision and Judgement Order in a prior appeal: In re Banyai Variance, No. 53-5-18 Vtec (Vt. Super. Ct. Envtl. Div. Jan. 4, 2019) (Walsh, J.). Since Mr. Banyai chose not to appeal that decision and Judgment Order, they have become final and may not be challenged in this or any subsequent legal proceeding. See 24 V.S.A. § 4472(d).

determination that his 30' ROW was a pre-existing nonconformity. Even though the DRB determination was under review in the neighbors' appeal pending before this Court in Docket No. 53-5-18 Vtec, the ZA issued the zoning permit Mr. Banyai requested on June 4, 2018.

15. Mr. Banyai's 2018 zoning permit request was accompanied by a hand-written site map, which depicted his property as a large rectangle, within which is a smaller rectangle. We understand that Mr. Banyai intended this smaller interior rectangle to depict the "school" he intended to build. There is only one rectangle on this site map and no shooting ranges depicted on the site map.

16. The ZA noted on the bottom of Mr. Banyai's 2018 application that $400.00 was "pd. [in] cash" in connection with this application.

17. When this Court conducted the initial scheduling conference in the neighbors' appeal (Docket No. 53-5-18 Vtec), the appealing neighbors advised that Mr. Banyai had recently requested and received a zoning permit that relied upon the DRB's determination that Mr. Banyai's 30' wide ROW was a pre-existing nonconformity. The presiding judge (Judge Walsh) indicated during that conference that the ZA had no jurisdiction to issue the June 4, 2018 zoning permit to Mr. Banyai, since the DRB's right-of-way determination, upon which that permit was premised, was currently under appeal to this Court.

18. By letter dated July 26, 2018, the Town notified Mr. Banyai that the June 4, 2018 zoning permit had been issued without jurisdiction, that he did not have appropriate permits in place, and that he must cease all his operations until further order of this Court.[6]

19. On January 4, 2019, this Court issued a Decision and Judgment Order concluding that Mr. Banyai's April 1, 2018, letter to the DRB was an untimely appeal of the ZA's original permit denial, but that the letter should also be regarded as a distinct application for a variance concerning the existing right-of-way. *See* In re Banyai Variance, No. 53-5-18 Vtec at 5–6 (Vt. Super. Ct. Envtl. Div. Jan. 4, 2019) (Walsh, J.).

20. The Court remanded the matter to the DRB to consider Mr. Banyai's variance application in the first instance. The Court also held that "the ZA's [original] conclusion that the right-of-way

---

[6] This letter is detailed in the Town's Amended Complaint on page 3 at ¶ 21. Since Mr. Banyai did not challenge this representation in his Response, we regard the Town's representation as admitted.

did not comply with the Bylaws became final and binding when it went unappealed." Id. at 8–9. Implicit in the Court's ruling is that any zoning permit based upon the DRB's now vacated determination must also be vacated.

21.     After a hearing on remand from this Court, held June 20, 2019, the DRB denied Mr. Banyai's variance application in a decision dated July 11, 2019.

22.     The DRB's July 11, 2019, decision was posted at the Town Office, sent to Mr. Banyai via first-class mail, and sent to him at the email address he had used previously to correspond with Town officials.

23.     Mr. Banyai acknowledged receipt of the DRB's decision by responding via email on July 16, 2019.

24.     Mr. Banyai did not appeal the DRB's 2019 decision.

25.     As of December 16, 2020 (the date of the Merits Hearing), Mr. Banyai has never applied for or obtained a valid zoning permit for his change of use or for the various structures and shooting ranges he has built on the Property.  The Slate Ridge firearms training facility, and unpermitted structures therein, continued to operate through the date of the Merits Hearing.

26.     The Property has accommodated numerous attendees at the firearms training facility, many of whom have viewed social media posts for Mr. Banyai's training facility, known as Slate Ridge, and have visited the facilities in response to the Slate Ridge social media posts.  Mr. Banyai has been quoted as representing that 90% of those attending his training facility come in response to a relationship on social media.  *See* November 20, 2020 article from the Granville (NY) Sentential, entitled "Shooting Range Target of Controversy", a copy of which was admitted at trial as Town Exhibit A.

27.     The Slate Ridge facilities include a lecture hall that can host approximately 27 attendees and a safe that attendees may use to store their firearms.  Id.

28.     Mr. Banyai represented that he has invested more than $1.6 million worth of infrastructure and improvements on his property.  Id.  Mr. Banyai also represented that his facility is "putting out 100—plus students a month" and that "[e]very year [he] build[s] something new." Id.

8

29.     The ZA issued a Notice of Violation ("NOV") to Mr. Banyai on August 29, 2019, stating that he was in violation of Article VIII § 2 of the Bylaws.  Specifically, the NOV stated that Mr. Banyai "erected multiple structures in violation of this provision, and [was] operating a training facility/shooting school in violation of this provision."  *See* Town's Exhibit D.

30.     The ZA also noted in the NOV that the "only permitted use on the 541 Briar Hill Road property is a 24' by 23' garage/apartment [structure] that was approved (Application #18-10-05) on October 5, 2019 [sic] . . .."[7]  Id.

31.     The ZA further noted in the NOV that Mr. Banyai was directed to cure the identified zoning violations within "seven days" and that if he failed to do so, he "will be subject to a fine of up to $200 per day as provided in 24 V.S.A. § 4451(a)."  Id.  The NOV also explained how Mr. Banyai may appeal the NOV determinations and that if he wished to appeal, his notice of appeal must be submitted "in writing within fifteen days to the Pawlet Town Clerk . . .."  Id.

32.     Mr. Banyai did not submit a timely appeal of the NOV to the Pawlet Town Clerk.  The Town recorded a copy of the NOV in the Town of Pawlet Land Records on September 3, 2020, at Book 119, Pages 294–295, thereby effectuating a lien upon the Property.

33.     Mr. Banyai's unpermitted activities on the Property have resulted in increased traffic on nearby roads and excessive noise in the vicinity of the Property, including frequent semiautomatic and other types of gunfire, as credibly testified to by John Davis, a neighbor familiar with such weapons.

34.     Two of Banyai's neighbors, John Davis, and Mandy Hulett, testified that the frequent semiautomatic and other types of gunfire interfered with the quiet enjoyment of their property and presented a safety concern.

35.     Mr. Banyai has repeatedly responded to neighboring property owners and town officials in an unduly confrontational and combative manner.  Mr. Banyai has made reference to Pawlet town officials as "incompetent" "imbecile," and "stupid[]" in various forms of email correspondence and Slate Ridge social media posts.  *See* Town Exhibits B (detailing email

---

[7] This date obviously contains a typographical error, given the reference in the application number.  We also note that the NOV is dated August 29, 2019.  Mr. Banyai also provided a copy of his application and the ZA's approval as Banyai Exhibit 3, page 3.  The ZA's approval includes a date of "October 5, 2018."  Id.

correspondence between Mr. Banyai and the Town of Pawlet ZA); *see also* Town Exhibit C. Mr. Banyai has also stated that his neighbors, John Davis and Mandy Hulett have "exhibited criminal, narcissistic, and corrupt behaviors within the town government." *See* Mr. Banyai's Post-Trial Brief filed on Jan. 13, 2020, at 3.

36.     Mr. Banyai and his firearms invitees brought a vehicle onto his property on which someone had written "Hulett Trucking" on a door of the vehicle, then proceeded to shoot bullets through that vehicle door. *See* Town's Exhibit E. Hulett Trucking is a partial version of Mr. Hulett's business name.

37.     Mrs. Hulett testified at trial that Mr. Banyai, through the Slate Ridge social media posts, requested help locating an SUV for use in firearms training. The vehicle depicted in a photograph included in the Slate Ridge request was nearly identical to a vehicle Mr. and Mrs. Hulett had recently given to their teenage daughter to drive.

38.     This Court conducted a merits hearing on December 16, 2020. During the hearing Mr. Banyai refused to testify under cross-examination or participate further in the hearing. Mr. Banyai stated the reason for his refusal to participate was because of "biases, nepotism, and corruption," together with other replies that the record makes unintelligible. The Court then advised Mr. Banyai that these arguments presented no recognized basis for refusing to respond to questions in a civil hearing. Mr. Banyai continued to refuse to respond. When Mr. Banyai continued to refuse to respond to questions during cross examination, the Court warned that it would hold him in contempt and issue sanctions against him if he continued to fail to respond to questions on cross-examination without justification. When he continued to refuse, the Court declared that Mr. Banyai was in contempt and concluded that the appropriate sanction against him was to allow into evidence Town Exhibits A, B, and C, which are copies of a newspaper article from the Granville Sentinel and portions of the Facebook pages for Slate Ridge in which Mr. Banyai is quoted making representation about his firearms training operations, the facilities he's constructed (albeit without the necessary zoning permits), the invitees who have come to his property, and the $1.6 million in investments he has made on the property.

39.     As a further sanction, the Court also admitted pages 25-26 of Town Exhibit E, which is a transcript from a hearing on Mr. Banyai's stalking request against his neighbors, entitled <u>Daniel</u>

<u>Banyai v. Richard and Mandy Hulett</u>, No. 20-st-00203.  These specific pages include Mr. Banyai's sworn testimony before the Civil Division of the Superior Court (Rutland Unit), in which he admits that a Facebook page is maintained for his property and that he has the right to control the contents of that Facebook page.

40.     The August 29, 2019 NOV provided Mr. Banyai with seven days to cure the stated zoning violations and that fines would be imposed if he failed to timely cure those violations.  Thus, Mr. Banyai had until Friday, September 6, 2019 to cure without the imposition of fines.

41.     As of January 14, 2021, the Town has incurred $16,616.00 in legal fees and $1,003.03 in court costs as a direct consequence of Mr. Banyai's zoning violations and refusal to cure.  Mr. Banyai received a detail itemization of the fees and costs the Town incurred and has chosen to not respond or otherwise object to the Town's itemization.

42.     The credible and uncontested evidence at trial is that Mr. Banyai had continued his zoning violations through the date of trial.  466 days elapsed from September 7, 2019 and December 16, 2020.

### Discussion

We begin our legal analysis by noting that The Town's duly adopted Bylaws state, in relevant part, that: "[n]o building construction or land development may commence and no land or structure may be devoted to a new or changed use within the [Town] without a zoning permit" authorizing such construction, development or use.  Bylaws, Art. VIII, § 2.

A municipality's lawful enactment of land use regulations has a solid, multi-layered foundation in decades-old legal precedent.  Its origins are found in the proper exercise of the police powers of the state and its subsidiaries, including individual municipalities.  <u>Galanes v. Town of Brattleboro</u>, 136 Vt. 235, 240 (1978), (*citing* <u>Village of Euclid v. Ambler Realty Co.</u>, 272 U.S. 365 (1926)).  Lawful zoning enactments are "entitled to the presumption of validity." <u>Galanes</u>, 136 Vt. at 241 (*citing* <u>Town of Charlotte v. Richter</u>, 128 Vt. 270, 271 (1970)).

Mr. Banyai did not present a challenge to the enactment of the Bylaw provisions he is charged with violating.  Rather, the focus of his challenge is his claims that his rights have been

11

violated.[8] We did not find these claims credible in the context of this zoning enforcement action; the claims do not justify him ignoring or flouting the lawfully enacted land use regulations that he is now charged with violating. We therefore focus our remaining analysis on whether Mr. Banyai may be held liable for the zoning violations that the Town alleges he committed, and what the consequences should be for those violations.

## I. *After having been properly served with the NOV, Mr. Banyai failed to appeal.*

Mr. Banyai first alleges that the NOV was improperly served. This Court's June 5, 2020 decision ("2020 decision") addressed this issue, noting that the Town sent the NOV in compliance with the statute by certified and first-class mail at the last known address of Mr. Banyai at 541 Briar Hill Road in West Pawlet. *See* Town of Pawlet v. Daniel Banyai, No. 105-9-19 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Jun. 5, 2020) (Durkin, J.). In this decision, we concluded that "fact that one of the mailings was refused does not render the notice inadequate." Id. (*citing* Town of Sharon v. Walter Radicioni, No. 56-6-18 Vtec, slip op. at 1, 3 & n.2 (Vt. Super. Ct. Envtl. Div. Oct. 19, 2018) (Durkin, J.) (notice was "reasonable and adequate" where the Town sent an NOV to the subject property by certified mail, notwithstanding the fact that the defendant refused delivery).

In our 2020 decision, we also concluded that because Mr. Banyai failed to timely appeal the NOV, he is now barred from challenging its factual and legal conclusions and is now bound by all the determinations made therein. *See* 24 V.S.A. § 4472(d). A timely appeal is the "exclusive remedy" available to a party who wishes to challenge the determinations or acts of a municipal officer or panel. *See* 24 V.S.A. §§ 4472(a), (d). Thus, failure to timely appeal restricts parties from later contesting, "either directly or indirectly," the contents of a notice of zoning violation "in any proceeding, including any proceeding brought to enforce this chapter." 24 V.S.A. § 4472(d) (failure to appeal municipal decision binds interested persons to "decision or act of that officer,

---

[8] Mr. Banyai raises multiple evidentiary arguments concerning relevance and admissibility. While this Court addressed, in part, these issues of relevance at the hearing, we further note that as a result of Mr. Banyai's refusal to testify and participate in the hearing, this Court held Mr. Banyai in contempt. Therefore, this Court imposed a sanction, which allowed into evidence Exhibits A, B, and C. These Exhibits include copies of a newspaper article from the Granville Sentinel and portions of the Facebook pages for Slate Ridge in which Mr. Banyai is quoted making representation about his firearms training operations, the facilities he's constructed (albeit without the necessary zoning permits), the invitees who have come to his property, and the $1.6 million in investments he has made on the property. As these exhibits have been admitted as a sanction for Mr. Banyai's refusal to provide information and participate, we need not further address admissibility here.

the provisions, or the decisions of the panel," and individual "shall not thereafter contest, either directly or indirectly, the decision or act, provision, or decision of the panel in any proceeding, including any proceeding brought to enforce this chapter").

Our June 5, 2020 decision was an interlocutory determination, since no final judgment was entered by it. *See* Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 182 (1987) ("The denial of a motion for summary judgment, however, is an interlocutory order, and is not appealable as a matter of right.") (*citing* In re Pyramid Co., 141 Vt. 294, 299 (1982)); Myers v. LaCasse, 2003 VT 86A, ¶ 9, 176 Vt. 29. However, nothing revealed in the December 16, 2020 Merits Hearing caused us to reconsider or change our legal determinations there. We therefore incorporate here by reference our June 5, 2020 legal conclusions and rely upon them as part of our basis for rendering judgment in favor of the Town and against Mr. Banyai.

Having determined that the Town is entitled to judgment against Mr. Banyai, based upon the NOV, we turn to the remedies to be imposed.

### II.        Mr. Banyai is permanently enjoined from the unpermitted use of his Property.

On January 21, 2021, this Court issued a preliminary injunction directing that Mr. Banyai "shall not conduct or permit to be conducted any school and/or firearms training activities on the Property situated at 541 Briar Hill Road, nor host classes of any type on the Property . . .." Town of Pawlet v. Banyai, No. 105-9-19 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jan. 21, 2021) (Durkin, J.).

As noted above, nothing that was disclosed in our Merits Hearing caused this Court to reconsider or revise its legal determinations concerning Mr. Banyai's liability, as established by our interlocutory determinations on June 5, 2020. We therefore conclude that Mr. Banyai is liable for the zoning violations alleged by the Town. We therefore also conclude that the Preliminary Injunction Order must be made permanent, given that Mr. Banyai has no legal authority to construct the buildings or conduct the uses that he has done on his property.

Mr. Banyai asserted that he has invested approximately $1.6 million on improvements to his property, and that he intends to continue to make improvements each year. *See* Town Exhibit A. And yet, he has failed and refused to disclose the specifics of those improvements to Town officials. We therefore direct that Mr. Banyai hire a Vermont-licensed surveyor or engineer to

complete an accurate site plan of his property, detailing all improvements, dimensions, and setbacks from boundary lines, so that the Town may receive a clear understanding of the improvements on Mr. Banyai's Property. So that the Town and the Court may have confirmation that this work is being completed, we direct that Mr. Banyai enter into a contract with a Vermont-licensed surveyor or engineer within 30 days of this Merits Decision becoming final, to then pay for the work to be completed by a specific deadline to be specified within the surveyor or engineer contract, and to file a copy of the completed site plan with the Court, with a copy to be served upon the Town.

Once that site plan is completed and filed with the Court and the Town, Mr. Banyai shall immediately begin and complete the deconstruction and removal of all buildings on his property that have not be authorized by a valid zoning permit. Mr. Banyai shall file written certifications with the Court of when this deconstruction and removal work has begun, when it is 50% complete, and when it is fully completed.

Failure of Mr. Banyai or his agents to complete this work and certification may result in further orders of this Court, including orders authorizing the Town and its agents, if it so chooses, to enter upon Mr. Banyai's Property to complete this itemization of improvements and deconstruction and removal work.

### III.    *Mr. Banyai may not rely upon the June 4, 2018 zoning permit.*

Mr. Banyai has provided evidence suggesting that on June 4, 2018, the ZA at the time approved a second permit application. Upon receipt of this permit, it would have been eminently reasonable for Mr. Banyai to assume that he was approved for the development detailed in his application and site plan. Unfortunately, as the Town points out, the ZA's approval was issued while the same Project was before this Court on appeal from the DRB's April 25, 2018 decision. As we have noted above, once an appeal was pending, the ZA lacked jurisdiction to approve the Project. *See* In re Freimour & Menard Conditional Use Permit, No. 59-4-11 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div. June 6, 2012) (Durkin, J.) (discussing the jurisdictional impacts of appellate review and finding that a proper appeal to the Environmental Division divests the municipality of "its jurisdiction over the matter on appeal"); *see also* In re Mount Snow, Ltd. Parking Plan (Application #05-MS100-05) (Appeal of Vermont Wild Hotel, Inc.), No. 227-10-05

Vtec, slip op. at 2 (Vt. Envtl. Ct. Jan. 24, 2006) (Wright, J.) (*citing* 24 V.S.A. § 4470(a)Furthermore, the fact remains that when Mr. Banyai failed to appeal the subsequent NOV, he cannot now challenge the violations found therein, including the determination by the ZA that "[t]he only permitted use on the 541 Briar Hill Road property is a 24' by 23' garage/apartment that was approved [on] . . . Application #18-10-05 . . .." August 29, 2019 NOV (Town Exhibit D) at 1.

Even if we were to conclude that Mr. Banyai could rely upon a zoning permit that the ZA issued when he had no jurisdiction or authority to do so, given that the DRB decision upon which it was based was then under appeal, the 2018 zoning permit only identified a single structure, with no shooting ranges and no detail of the "school" facilities. In essence, Mr. Banyai has completed improvements and increased the uses of his Property well beyond the authority of the invalid 2018 permit.

For all these reasons, we conclude that the Town is entitled to a declaratory judgment that the 2018 permit is both not valid and does not authorize the improvements and uses that Mr. Banyai has conducted on his Property. As an equitable remedy in light of the Court declaring that the 2018 zoning permit is invalid, we conclude that Mr. Banyai is entitled to a credit for the $400.00 he paid when he applied for that permit, since the ZA did not at that time have authority to issue that permit.

### IV.    *Mr. Banyai is liable for fines due to his zoning violations.*

When this Court has concluded that a zoning violation has occurred as a municipality alleges in its zoning enforcement complaint, we have often relied upon the criteria detailed in the Uniform Environmental Enforcement Act (10 V.S.A. § 8010) to determine what an appropriate level of fines should be imposed against the zoning violator. In re Beliveau NOV, 2013 VT 41, ¶ 23, 194 Vt. 1 ("The [trial]court has the discretion to determine the amount of a fine, and, in doing so, to balance any continuing violation against the cost of compliance and to consider other relevant factors, including those specified in the Uniform Environmental Enforcement Act.") (*citing* In re Jewell, 169 Vt. 604, 606–07 (1999) (mem.)); *see also* City of St. Albans v. Hayford, 2008 VT 36, ¶ 17, 183 Vt. 596. Indeed, this Court has previously taken into consideration the landowner's benefit and the Town's court costs in seeking compliance with the

15

zoning regulations.  Id.  We therefore review those criteria here to guide the Court in determining the appropriate response to Mr. Bania's zoning violations.

### a. Actual or Potential Impact on Public Health, Safety, Welfare, and the Environment

By the first criteria, we are directed to determine "the degree of actual or potential impact on the public health, safety, welfare, and the environment resulting from the violation."  10 V.S.A. § 8010(b)(1).  For the reasons stated below, we conclude that this criteria weighs strongly in favor of imposing significant fines upon Mr. Banyai.

First, we note that by refusing to apply for a zoning permit which would include a complete disclosure of the buildings, shooting ranges, other improvements, and planned activities for his property, Mr. Banyai deprived the Town officials, his neighbors, and other townspeople with disclosures of what improvements and activities were planned for his property.  Mr. Banyai first began the unpermitted building and uses of his property in 2017; he continued after multiple warnings from Town officials, and even continued after he received the NOV that forms the basis for the Town's 2019 enforcement complaint.  By refusing to disclose his plans, he's left the Town officials and his neighbors at a loss to determine the specifics of his development and use, including (1) the number and dimensions of the buildings proposed or already constructed; (2) the setbacks between those buildings and his neighbors' property lines; (3) the other site improvements, such as shooting ranges he planned; (4) the hours of operation; (5) the number of invitees or users of his improvements; (6) the days and hours of operation; (7) planned lighting; (8) what plans he has in place to avoid environmental damage from the firearm shells and bullets deposited on his property; and (9) other essential characteristics of his land uses that are typically disclosed in an application for a zoning permit for a development of this significance.  All of these failures to disclose bring potential risks to the neighbors' safety and that of the surrounding environment.

As we noted in our January 21, 2021 Entry Order granting the Town's request for a preliminary injunction, we continue to find it difficult "to imagine an alleged zoning violation that could be the source of more significant irreparable harm than an unpermitted shooting range." Town of Pawlet v. Banyai, No. 105-9-19 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Jan 21, 2021)

(Durkin, J.). The fact that Mr. Banyai has not disclosed the number of firearm shooters that will be using his property, nor has he disclosed the days and hours of operation, adds to the interference with his neighbors' ability to peaceably enjoy their property and be free of potential harm. Mr. Banyai's habit of threatening and attempting to intimidate those who contact him adds to these potential dangers and risks. Lastly, we are left to wonder whether there will be environmental damage from the firearm shells and bullets that shooters discharge on the property.

For all these reasons, we conclude that the degree of actual or potential adverse impacts on the public health, safety, welfare, and the environment resulting from Mr. Banyai's violations warrants the imposition of significant fines.

### b. Mitigating Circumstances

Second, we are asked to consider any "mitigating circumstances, including unreasonable delay by the Town as it sought to enforce its zoning regulations against Mr. Banyai. *See* 10 V.S.A. § 8010(b)(2).

We first note that we were not made aware of any "unreasonable delay" by the Town in its prosecution efforts. Mr. Banyai's response to the Town's enforcement efforts and his refusal to engage in any efforts to comply with the applicable Bylaws, the 16 months from the issuance of the NOV to the Merits Hearing before this Court does not represent an unreasonable time expenditure, in this Court's experience. In addition to his adverse responses and refusal to attempt to comply with the applicable zoning regulations, Mr. Banyai caused further delays by attempting to secure a zoning permit while the DRB's 2018 decision was under appeal, thereby removing jurisdiction from the ZA, and submitting a site plan in support of his second application that provides no disclosure or authority for his activities. In summary, we were not provided with any credible evidence that could support a finding of mitigating factors in Mr. Banyai's favor. We therefore conclude that there have been no mitigating factors.

### c. Whether the respondent knew or had reason to know the violations existed

Third, we are asked to consider "whether the respondent knew or had reason to know the violations existed. *See* 10 V.S.A. § 8010(b)(3). The only evidence presented at trial was that

17

Mr. Banyai had a clear appreciation of the zoning violations he had committed, both in constructing several significant buildings and other improvements, which he estimated had cost him $1.6 million, and the unpermitted use of those buildings and improvements, both by himself, his family members, and twenty or more people he invited or allowed onto his property. Mr. Banyai was the principal orchestrator of all these activities. He at no time during these proceedings suggested that he was unaware of these zoning violations.

Mr. Banyai attempts to suggest that he understood that he had a zoning permit authorizing his construction and use. We have already concluded that the 2018 permit was invalid. See *above, at 14–15*. More to the point of Mr. Banyai's awareness, he was advised, both by the Town officials and by a separate judge of this Court considering his zoning variance appeal, that the 2018 permit was issued without lawful authority. In addition, the scant way he completed his 2018 application, Mr. Banyai knew or should have known that the construction and uses he was orchestrating on his Property were not authorized by the 2018 permit.

We conclude that Mr. Banyai was very much aware of the zoning violations he committed on his Property, and continued those violations, even after being warned that those activities constituted zoning violations. Our conclusions here provide further support for the imposition of significant fines.

### d. Record of Compliance

Fourth, we are asked to consider the respondent's record of compliance. *See* 10 V.S.A. § 8010(b)(4). Mr. Banyai's record of compliance has been horrendous. He has resisted the Town officials' efforts at attempting to have him comply with the applicable zoning Bylaws for years, beginning when his first began building on his property in 2017 and operating a firearms training facility. He continued his non-compliance even after being warned by Town officials, and then even after being served with the NOV. His non-compliance continued through the date of our trial. His years-long, continuance non-compliance is further evidence warrants the imposition of a significant daily fine.

### e. Proper level of fines as a deterrent

Fifth, we are asked whether the imposition of fines would have a deterrent effect upon Mr. Banyai. *See* 10 V.S.A. § 8010(b)(6).[9] The credible facts presented at trial convince the Court that only significant fines will have a deterrent effect upon him. We were not told of the sources of Mr. Banyai's resources, but it was revealed that Mr. Banyai professes to have invested $1.6 million thus far in his property improvements, and that it is his intention to make further improvements "every year." We conclude that only a significant daily fine will convince Mr. Banyai to come into compliance with the applicable zoning Bylaws, by immediately dismantling and removing his unpermitted improvements and by first receiving valid zoning permit for any future improvements.

### f. Costs of Enforcement

Sixth, we are asked to determine the costs of enforcement. 10 V.S.A. § 8010(b)(7). The Town presented credible and unrefuted evidence that it incurred attorneys' fees and litigation costs (including service and filing fees) that total $17,619.03. We conclude that the Town incurred further expenses when it responded to and prosecuted Mr. Banyai's zoning violations, since we were not presented with details on the hours expended by Town officials in prosecuting his violations. But in the absence of those specifics, we conclude that the Town's out-of-pocket expenditures were at least $17, 619.03.

### g. Length of Time the Violation Existed

Lastly, we are asked to consider the length of time that the violations noticed in the NOV existed. 10 V.S.A. § 8010(b)(8). The August 29, 2019 NOV provided Mr. Banyai seven days of grace in which to cure the zoning violations alleged, meaning that he could cure by September 5, 2019 and not be assessed any fines. He was also advised that he could appeal the NOV to the DRB, if he filed a written notice of appeal in fifteen days. He chose to do neither.

Thus, Mr. Banyai, through his refusal to respond to the NOV, became liable for a daily fine beginning on Friday, September 6, 2019. His liability for daily fines continued through the date of trial (December 16, 2020), given his constant continuation of his violations. Thus, since each

---

[9] *See* 10 V.S.A. § 8010(b)(5) has been repealed. We therefore do not consider a criteria that was once the subject of that statutory provision.

day a zoning violation continues constitutes a separate violation, Mr. Banyai is liable for a total of 466 days of violation. *See* 24 V.S.A. § 4451(a).

Taking in consideration all the above criteria, we conclude that a fine of $100.00 per day should be imposed for each day of Mr. Banyai's zoning violations.  We therefore award a total of $46,600.00.

### V.      The Town is not entitled to an award of reimbursement for attorneys' fees.

The Town requests that we also make a separate award of reimbursement of its attorneys' fees and expenses.  We decline to do so, given that we have already taken into consideration the attorneys' fees that the Town incurred in prosecuting Mr. Banyai's zoning violations.  We also note that the Town has not referred us to a Bylaw or statutory provision that authorizes the additional award of reimbursement of attorneys' fees, particularly when the Town's costs have already been taken into consideration in an award of fines.

Vermont adheres to "the American Rule," which provides that parties to litigation are not entitled to an additional award for reimbursement of attorneys' fees, absent a statutory provision or contract term that authorizes such an award.  *See* Galkin v. Town of Chester, 168 Vt. 82, 91 (1998) ("The American Rule ordinarily prohibits an award of attorney's fees absent a specific statutory provision or an agreement of the parties.").  We therefore decline to enter a separate award to the Town for reimbursement of its attorneys' fee.  However, given that the credible, undisputed evidence was that the Town incurred court costs totaling $1,003.03 and our procedural rules provide for an award of reimbursement of court costs to a prevailing party, we enter a further award to the Town of $1,003.03.  *See* V.R.C.P. 54(d)(1).

### VI.     Further relief for the Town may only be awarded after a contempt showing.

We now address what we understand to be the Town's final two claims.  The Town first claims that, should Mr. Banyai not dismantle and remove all unpermitted improvements on his property, that the Court should authorize Town officials to enter onto Mr. Banyai's property to dismantle and remove such improvements.  If Mr. Banyai ignores this Court's directive, such an order could be warranted, if the Court either finds him in contempt of this Decision and Judgment Order, or in connection with a subsequent zoning enforcement complaint.  But we believe it would be premature and prejudicial to assume that Mr. Banyai will disregard this Courts orders.

20

Further, to support such a significant further order as allowing Town officials to enter upon a private property owner's land and dismantle and remove his unpermitted improvements, the Court would need to first receive and find credible Mr. Banyai's alleged contemptuous behavior and reach the legal conclusion that such a drastic order was warranted.

Lastly, the Town requests that, should Mr. Banyai fail and refuse to abide by this Decision and Judgment Order, the Court should impose future fines of $200.00 per day. Such fines could be warranted, if Mr. Banyai shows his contempt for this decision and Judgment Order. But for reasons similar to those stated above, we defer and decision concerning future files until we receive an adequate showing of Mr. Banyai's failure to abide by our judgment.

## Conclusions of Law

For all the reasons stated above, we enter the following orders:

1. The August 29, 2019 NOV issued by the Town Zoning Administrator and statutorily served upon Mr. Banyai is hereby **UPHELD**.

2. A declaratory judgment is entered in favor of the Town and against Mr. Banyai that the June 4, 2018 zoning permit is **VOID**, since the Zoning Administrator issued that permit impermissibly while the underlying DRB decision upon which it was based was then under appeal to this Court in a separate proceeding. *See* In re Banyai Variance Appeal, No. 53-5-18 Vtec (Vt. Super. Ct. Envtl. Div. Jan. 4, 2019) (Walsh, J.). We further declare that the June 8, 2019 zoning permit did not authorize the multiple buildings, shooting ranges and tactical firearms training facility that Mr. Banyai was operating.

3. Fines are imposed against Mr. Banyai, payable to the Town, of $100.00 per day for each of the 466 days that that ran from the day after he was provided to cure his zoning violations pursuant to the NOV (i.e.: September 6, 2019) and through the day of trial (December 16, 2020) for a total of fines due to the Town of $46,600.00 together with reimbursement of court costs of $1,003.03, and less a return of the $400.00 fee Mr. Banyai paid in connection with the 2018 permit that is hereby **VOIDED**, for a total due the Town by Mr. Banyai of **$46,603.03**.

4. Mr. Banyai shall hire a Vermont-licensed surveyor or engineer to complete an accurate site plan of his property, detailing all improvements, dimensions, and setbacks from boundary lines, so that the Town may receive a clear understanding of the improvements on Mr. Banyai's Property. So that the Town and the Court may become convince that this work is being completed, we direct that Mr. Banyai enter into a contract with a Vermont-licensed surveyor or engineer within 30 days of this Decision and Judgment Order becoming final, to then pay for the work to be completed by a specific deadline to be specified within the surveyor or engineer

contract, and to file a copy of the completed site plan with the Court, with a copy to be served upon the Town.

5.  Once that site plan is completed and filed with the Court and the Town, Mr. Banyai shall immediately begin and complete the deconstruction and removal of all buildings on his property that have not be authorized by a valid zoning permit. Mr. Banyai shall file written certifications with the Court of when this deconstruction and removal work has begun, when it is 50% complete, and when it is fully completed.

6.  The NOV and the accompanying Judgment Order shall evidence encumbrances upon the Property commencing on September 3, 2019, which is the date that the NOV was recorded in the Town of Pawlet Land Records. The Town may record a certified copy of the accompanying Judgment Order in the Land Records as well. Any party claiming an ownership interest from or through Mr. Banyai shall also be subject to the recorded NOV and Judgment Order.

A Judgment Order accompanies this Merits Decision. This completes the current proceedings before this Court concerning this municipal enforcement litigation.

Electronically signed on March 5, 2021 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division